# Richmond

THOMAS A. LANE V. COMMONWEALTH OF VIRGINIA.

November 19, 1945.

Record No. 2995.

Present, All the Justices.

The opinion states the case.

*William Eldridge Spain* and *Percy S. Smith,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *V. P. Randolph, Jr., Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Thomas A. Lane was indicted for feloniously stealing, taking, and carrying away, on September 24, 1944, "one Underwood portable typewriter to the value of $50, one Burroughs comb. cash and adding machine to the value of $175, one Sioux bench grinder of the value of $35, one 38 Cal. automatic pistol to the value of $25, two cases Conoco motor oil to the value of $16.80, three auto Chev. water pumps to the value of $16.50, one U. S. autographic ticket machine to the value of $40, two auto starters to the value of $16, nine auto generators to the value of $72, six Dodge auto bearings to the value of $6, six Ford headlight rims to the value of $9, one lot U. S. gas coupons to the value of 200 gallons, value $——, one electric drill to the value of $5, and three auto tires to the value of $18, all to the value of $553, the property of C. E. Copley and B. E. Browder, partners trading and doing business as C. and B. Auto Wrecking Company." Upon his arraignment, he pleaded not guilty, and with his consent and the concurrence of the Commonwealth's Attorney and the court, entered of record, he waived a jury and was tried by the court.

The court, having heard the evidence, found the accused guilty, and fixed his punishment at confinement in the penitentiary for two and one-half years. A motion "in arrest of the judgment as contrary to the law and the evidence," treated in the briefs of counsel and in the argument before us as a motion to set aside the judgment, was overruled, and sentence was accordingly imposed upon the accused.

The sole assignment of error is that the evidence of the Commonwealth's witnesses was unworthy of belief, and should have been rejected by the trial court, and that, consequently, with such rejection, the judgment is without evidence to support it.

The evidence is certified to us in narrative form. It may be summarized as follows:

C. E. Copley testified that on Friday night, September 24, 1944, he left the place of business of the C. and B. Wrecking Company securely locked. On the following day, he was notified by his partner, B. E. Browder, that during the preceding night their place had been broken into and entered, and a large portion of the merchandise and contents therein removed. The police were then notified, and the two partners, in company with Sergeant R. T. Baughan, a detective of the Richmond Police Force, went to a service station owned and operated by Thomas A. Lane, at Belvidere and Grace Streets, Richmond, Virginia. Upon arriving there, they found Lane talking with a man named Felton Trotter. Copley told Lane and Trotter that his place had been entered, his property stolen, that he was looking for his goods, and that he suspected Trotter. Lane told Trotter that if he was guilty, he ought to tell the truth about it. Sergeant Baughan took Trotter into custody and carried him to the police station, accompanied by Copley, leaving Browder at the service station with Lane. At the police station, Trotter admitted that he and Clay Duncan had broken into the place, and removed certain property therefrom and sold it to Lane.

Browder testified that he did not accompany the police officer with Trotter and Copley to the police station since

he was suspicious of Lane, and had seen a small portion of his goods inside the latter's service station before they left; that he took up the matter with Lane, and Lane told him that he had loaned Trotter $20, and had taken the goods for security in exchange for certain tools which Clay Duncan had originally left in pawn for the loan; that Trotter had brought the goods to his station; and the reason for the exchange was that Duncan needed his tools to work with on the following Monday. Browder further stated that Lane then told him that there were probably some more of his goods in the station. They went down into his basement, and there found a number of articles belonging to the C. and B. Wrecking Company. Lane told him to wait a short while longer, that he, Lane, would probably find some more goods, to which Browder replied, "If you can find it in a short while, you can find it now." Lane then went to an automobile, which he said belonged to him, opened up the trunk in the back, and therein were the adding machine, the typewriter, and other articles of the C. and B. Wrecking Company. Lane said he did not know how they could have gotten into the car. Browder was unable to tell whether the trunk of the car was locked or not. Lane then called the police station, and informed Sergeant Baughan that he had found the additional articles on his premises. The officer immediately returned to Lane's station, and took him into custody.

Sergeant R. T. Baughan testified that when he talked to Lane, upon his first visit to the service station, Lane admitted to him that the property first found, belonging to the C. and B. Wrecking Company, had been substituted by Duncan and Trotter for tools belonging to Duncan, previously left as security for a $20 loan to Duncan. He said Trotter and Duncan confessed to him that they had broken into and entered the building of the wrecking company, and stolen the goods in question; that he arrested Lane and locked him in the same cell with Trotter; and that most of the goods stolen were recovered on Lane's premises, except the pistol which was recovered from another person.

Trotter testified that he and Duncan had been drinking together on the night of the robbery; that he did not know Lane before that night; that they had a drink of whiskey with Lane, and sold him some tools for $20; that they asked Lane if he would be interested in buying some tires, which he had taken from his old car and left at the C. and B. Wrecking Company; that Lane said that if they were any good, he would buy them; that he then went to the building of the C. and B. Wrecking Company with Duncan, entered it, and brought away certain spark plugs, tires, and tools, being unable to find his own tires; that he took these articles to Lane, and Lane remarked that the tires were no good, and inquired where he got the other things from; that he told Lane he got them from the C. and B. Wrecking Company; that Lane then asked him if he could get anything else from there; that thereupon he and Duncan went back and brought the other things which were found at Lane's place and left them there with Lane; and that Lane knew where all of the goods came from.

Duncan testified that he had drunk so much he was almost unable to get out of his car on the first trip to Lane's service station, and he did not know what was then said between Lane and Trotter. He stated that he and Trotter afterwards went to the C. and B. Wrecking Company's place to get Trotter's tires; that after getting there, Trotter went in and handed out certain articles, which he put in his car; that these things were delivered to Lane; that he told the police officer they were substituted for tools left as security for a $20 loan from Lane; that on this trip he did not hear what Trotter and Lane said to each other; and that later he and Trotter again went back to the wrecking company's place, and brought to Lane's place the other articles found in the back of Lane's automobile.

On cross-examination Trotter and Duncan each admitted that they had falsely testified in the preliminary hearing given Lane, in the police court, that they knew nothing about the articles found in the rear of the automobile belonging to Lane; whereas the truth of the matter was that

they had brought the articles to Lane's premises and delivered them to Lane. Duncan said he hoped to receive some consideration for his testimony in behalf of the Commonwealth. Trotter further testified that Lane told him when he was locked up in the cell with him, that he, Trotter, ought to take the blame for all of the offense, because he, Lane, had been in trouble before, and it meant a lot of time for him, while Trotter would be given a suspended sentence.

Lane testified that on the night of September 24, 1944, Trotter and Duncan came to his service station, and that Duncan was obviously under the influence of liquor, but Trotter was in much better condition. They asked him for money, and he loaned them $20 on tools belonging to Duncan. They then asked him if he would buy Trotter's tires, and he replied that he would buy them if they were any good. Duncan and Trotter left and he soon thereafter went home and went to bed; that several hours later he was called on the telephone by Trotter and was told that Duncan wanted to return the $20 and obtain his tools; that he dressed and went back to his station and met them; that Trotter had tires with him which were no good, and he also had some spark plugs and other automobile accessories which he asked to be allowed to leave in place of the tools of Duncan; that he agreed to the substitution, and these articles were in his station at the time that Copley, Browder, and Sergeant Baughan arrived; that he did not know the articles had been stolen; that after he told Trotter to tell the truth, and Trotter admitted he had stolen them, and had been taken to the police station, he looked around and found some more of the property of the wrecking company in his basement and in the trunk of an old car on his premises and that he did not know they were there nor how they got there. He said that the door of his basement was open, and that it was easy for any one to put goods in there after he had closed. He denied the ownership of the automobile on his premises, in which some of the goods were stored; but admitted that he had purchased the car after his arrest.

Lane further testified that he had been convicted twice

for grand larceny and once for involuntary manslaughter; but that his last conviction had been about fourteen years prior to his arrest in this case. He also said that he had often gotten up from his bed at late hours in the night to go to his station to accommodate people who wanted gas or other service.

Mrs. Thomas A. Lane testified that so far as she knew, her husband had never before gotten up in the night and left after a telephone call.

James E. Moore, a truck driver, who parked his truck on nights, when arriving from out of town, on the lot attached to Lane's service station, testified that at three forty-five a. m., of September 25th, he noticed Trotter in the automobile owned by Duncan at the service station of Lane, during the absence of Lane, and that Trotter went to the automobile in which some of the stolen property was found, with a package under his arm, and failed in an effort to start it because the battery was too weak. His companion, Charles Pleasants, testified to the same effect.

The principal contention of the accused is that since the evidence of Trotter and Duncan was in conflict with their former testimony in the police court, the trial court should have rejected it as unworthy of belief.

The evidence of the witnesses for the Commonwealth is not incredible. It merely presents a conflict, which, unfortunately, occurs too often under circumstances similar to those here. It is a conflict which affects their credibility, and goes, not to their competency, but to the weight and sufficiency of their evidence. It is to be received and acted upon with great caution. It, however, leaves a jury or a court, as trier of the facts, free to accept the latest statements, if it is believed that they should be accepted. The conflict forcefully supports the theory of the accused in an argument before a court or jury, but once it has been weighed and acted upon, the result is usually conclusive. *Hendricks* v. *Commonwealth*, 163 Va. 1102, 178 S. E. 8. See also, *Parsons* v. *Parker*, 160 Va. 810, 170 S. E. 1.

In *Margiotta* v. *Aycock*, 162 Va. 557, 565, 174 S. E. 831, where witnesses out of court and in the preceding trials, had made statements materially different from those in the last trial, it was said, "A jury has the right to believe the testimony of a confessed perjurer though it should weigh his statements with great caution."

One who makes a false statement is allowed, and ought to be allowed, to correct it. In our whole philosophy of honesty and veracity, repentance and correction are emphasized.

The trial court heard the witnesses testify, observed their demeanor on the stand, and had the right to believe or disbelieve their statements. The issue was the truth of the statements made in the Hustings Court. On that issue, the finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed.

We have consistently held that the jury, as the trier of facts, may, if it be satisfied of the guilt of the accused, convict him upon the unsupported testimony of an accomplice; but that such evidence should be accepted and acted upon with great caution. *Watkins* v. *Commonwealth*, 174 Va. 518, 6 S. E. (2d) 670; *Guthrie* v. *Commonwealth*, 171 Va. 461, 198 S. E. 481, 119 A. L. R. 683.

It is clear that the evidence accepted by the trial court was sufficient to show that Lane was guilty of larceny, in receiving the stolen goods, knowing them to have been stolen. The direct and positive evidence of Trotter, alone, supports that finding. It is corroborated by circumstances.

The goods in question were stolen. They were shortly thereafter found in the exclusive possession of the accused. Such possession of itself, under the circumstances of this case, afforded sufficient grounds for a presumption of fact that he was the thief, in the absence of a reasonable explanation as to how he came in possession. What was a reason-

able explanation was a question for the trial court, as a trier of facts.

The explanation made by Lane is difficult to believe. His statement that several hours after a man had left his working tools with him as security for a loan of $20, the debtor wanted to repay the loan, and brought with him goods of the nature and quantity described, and compliance with that request at a very late hour of the night is, at the least, most suspicious and unusual. It is peculiar that the accused was immediately able to direct the owner of the property to the goods stored in his basement and in the back of the automobile on his premises, if he had no previous knowledge of their presence in those places. The explanation of the accused was more inclined to incredibility than the statements of the Commonwealth's witnesses.

In the brief of the accused and in the argument of his counsel before this court, it is suggested that the evidence does not show the actual value of the several articles stolen, and that, therefore, at most, the accused could only have been guilty of petty larceny.

Neither during the trial, nor on the motion "in arrest of the judgment," was there any point made that the value of the stolen property was other than as set out in the indictment. The value of the property was either conceded, not questioned, or entirely disregarded, so far as the record shows, except as to that portion which was accepted as security for the mentioned loan. The defense was directed entirely to the question of the guilt of the accused in obtaining possession of the property. The only exception taken and preserved was to the action of the court in overruling the motion "in arrest" of the judgment. Whether this was due to the provisions of Virginia Code, 1942 (Michie), section 4440a we do not know.

No bill of particulars was requested by the accused to show whether the prosecution was conducted under Virginia Code, 1942 (Michie), section 4440, for the larceny of goods and chattels of the value of $50 or more, or under Virginia Code, 1942 (Michie), section 4440a, for the larceny

of rubber tires used or designed for a motor vehicle. Grand larceny and the larceny of automobile rubber tires are under the two statutes made offenses cognate in character and degree. Under section 4440a, proof of the cash, value of a rubber tire stolen is not required to obtain a conviction for larceny. Proof of the larceny of the defined tire is sufficient.

In this case, the indictment did allege the larceny of three automobile tires. These tires, according to the evidence, were received by Lane with other stolen property, known by Lane to have been stolen, in place of the tools of Duncan, which tools were either purchased by Lane or held by him as security for a loan. The evidence is, therefore, sufficient to sustain a conviction under Code, section 4440a.

We find no reversible error in the record, and for the foregoing reasons the judgment is affirmed.

*Affirmed.*