COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Charlottesville, Virginia


EVERETTE LEE BEVERLY

MEMORANDUM OPINION[*] BY
v.          Record No. 2639-94-3      JUDGE JOHANNA L. FITZPATRICK
                                           NOVEMBER 5, 1996
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF BUENA VISTA
Thomas H. Wood, Judge

Humes J. Franklin, Jr. (C. Lynn Lawson;
Franklin, Franklin, Denney & Ward, P.L.C., on
briefs), for appellant.

Leah A. Darron, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


Everette Lee Beverly (appellant) was convicted by a jury of conspiracy to distribute cocaine in violation of Code § 18.2-256. On appeal, appellant argues: (1) his motion for a mistrial based on juror misconduct and preconceived bias should have been granted; (2) Instruction "A" should have been given; and (3) testimony regarding appellant's financial ability and community involvement should have been admitted in the sentencing phase. For the reasons that follow, we affirm the trial court.

**BACKGROUND**

On February 12, 1993, Ronald Lee Byers (Byers), a friend of appellant, arranged to sell cocaine to undercover State Police Special Agent Diane A. Mandeville (Mandeville) at a party held at

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

appellant's home.  At the party, Byers asked appellant if he could get Mandeville some cocaine.  After appellant called Tommy Davis (Davis), he and Byers left the party and went to Owens Hamilton's house, where appellant purchased four "eight-balls" (four packages each weighing one-eighth ounce) of cocaine from Davis on credit.  Appellant gave Byers two of the "eight-balls." Upon returning to the party, Byers sold the cocaine to Mandeville for $600.  The exchange occurred in appellant's bathroom while he was in another room.  Byers gave appellant a portion of the proceeds of this sale.  Appellant later paid Davis for the cocaine.

At trial on July 6, 1994, Davis testified that appellant purchased cocaine from him sometime in February.  Byers identified appellant as the person he "made the deal with to get the cocaine from Tommy Davis," and testified that appellant purchased the cocaine from Davis, because "Tommy never dealt with me."  The jury found appellant guilty.

In the bifurcated sentencing phase, testimony by appellant's daughter established that he paid the household bills, and his girlfriend testified that he was the major contributor to household expenses.  Appellant then testified regarding his occupation, income, residence, church attendance, lack of prior criminal record, hobbies, and family.  Over appellant's objection, the trial court ruled that he could not testify regarding when he bought his home or where he attended church.

2

The jury sentenced appellant to thirty years in prison and a fine of $250,000. The jury was polled after the verdict and after sentencing, and on both occasions indicated a unanimous verdict.

At a September 9, 1994 post-verdict hearing, appellant presented testimony from Carolyn and Warren Cash, about juror Leslie Clements.[1] Their testimony was contradictory and inconsistent.[2]

On September 22, 1994, the court conducted a hearing to investigate the allegations of juror misconduct, and recalled

---

[1]Carolyn Cash alleged that Clements came to her house on July 4, 1994 (two days before the trial) and stated to her, "I think [Everette Beverly] should get forty years or a five hundred thousand dollar fine. I think he should get the maximum." Mrs. Cash alleged that Clements expressed the opinion that appellant was, without doubt, guilty. She further alleged that after the trial, Clements told her he had "pushed the jury for--for a guilty verdict . . . he pushed it all the way."
Warren Cash alleged that he had a conversation with Clements prior to trial at Dana Corporation, and Clements indicated he knew he was serving on appellant's jury, and that he was sure appellant was guilty.
Clements admitted that he spoke with Mr. Cash about serving on jury duty prior to the trial, because he wanted to get excused from jury duty to start work at his new job that Mr. Cash helped him obtain. Clements stated that he did not discuss the trial with the Cashes until after it ended, when he told them the result. He also stated to the court that he told the judge at trial that he could "come up with [an unbiased] opinion." Clements stated that, prior to trial, he did not know which trial he would hear.

[2]Mrs. Cash initially testified that she did not know appellant personally, but on cross-examination admitted that she had been to his home, and that her children were "pretty good friends" of appellant's children. Mr. Cash then testified that he, his wife, and his children had been to appellant's house on more than one occasion to swim in appellant's pool. Mr. Cash testified that the conversation with Clements occurred at his place of employment on July 4; Mrs. Cash had testified that the conversation occurred at their home.

Clements and six other jurors. All the jurors indicated that they did not know whose case would be tried before they arrived at the courthouse on the day of trial, and that they did not know whether a civil or criminal case was to be heard. Clements acknowledged to the court that he knew several witnesses in the trial, but recalled that he had stated to the court at trial that he could render an unbiased opinion. Clements testified that he did not discuss the case with the Cashes, other than mentioning he would try to be excused from jury duty due to a work conflict, and that he had no preconceived notion of the case or of appellant's guilt or innocence.

**JUROR BIAS**

Appellant argues that the trial court erred in overruling his motion for a mistrial based on the allegations of juror misconduct and preconceived bias.

In overruling appellant's motion, the trial court stated as follows:

> [T]he key issue is whether [Clements] knew what trial it was beforehand is important and not one of these jurors knew what case they were trying when they walked in this Courtroom. Not one of them. . . . [I]nsofar as just demeanor does go, <u>Carolyn Cash had the worst demeanor of any witness I've ever seen</u>. Particularly when her own husband contradicted her on the stand and these are serious charges that these people brought. . . . [I]f I thought for one minute this had happened, I'd set this verdict aside but gentlemen <u>I don't believe it ever happened</u>. I don't believe there ever was any conversation between Mr. Clements and Carolyn Cash before this trial. I don't believe it ever happened and I don't believe he ever

4

expressed any, made any such expressions
about it.  I don't think he even knew the
trial was coming up so I'm going to overrule

> the motion to set aside this jury verdict Mr.
> Franklin.

(Emphasis added).

Where a trial court hears witnesses testify, observes their demeanor on the stand, and has the right to believe or disbelieve their statements, the "finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence . . . unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed." Lane v. Commonwealth, 184 Va. 603, 611, 35 S.E.2d 749, 752 (1945).

A trial court's determination that a particular juror is able to render a fair and impartial verdict is "entitled to great weight and will not be disturbed on appeal unless manifest error exists." Calhoun v. Commonwealth, 226 Va. 256, 258-59, 307 S.E.2d 896, 898 (1983). See also Williams v. Commonwealth, 19 Va. App. 600, 602, 453 S.E.2d 575, 576 (1995), rev'd on other grounds, 21 Va. App. 616, 466 S.E.2d 754 (1996) (en banc). Whether the trial court should grant a mistrial is a matter within the sound discretion of that court and, absent an abuse of discretion, the court's ruling on that issue will not be disturbed on appeal. Cheng v. Commonwealth, 240 Va. 26, 40, 393 S.E.2d 599, 607 (1990).

The trial court conducted an extensive investigatory hearing on September 22, 1994. It heard the testimony of Mr. and Mrs. Cash, Mr. Clements, and six other jurors. The court found no evidence of misconduct or bias, and determined that the testimony

6

proffered by the Cashes was inconsistent, contradictory, incredible, and not worthy of belief.  The record fails to show error or an abuse of discretion, and amply supports the findings of the trial court.

**JURY INSTRUCTIONS**

Appellant next argues that the jury was not properly instructed on the difference between conspiracy and distribution.

Appellant was charged with conspiracy to distribute cocaine. Instruction "C," the instruction given by the trial court, provided as follows:

> The defendant is charged with the crime of conspiracy.  The Commonwealth must prove, beyond a reasonable doubt, each of the following elements of that crime:
>
> (1) That the defendant entered into an agreement with one or more persons; and
> (2) That the agreement was that they were to commit distribution of cocaine (a Schedule II substance); and
> (3) That both the defendant and at least one other party to the agreement intended to commit distribution of cocaine (a Schedule II substance);
>
> If you find from the evidence that the Commonwealth has proved, beyond a reasonable doubt, each of the above elements of the offense as charged, then you shall find the defendant guilty.

The refused Instruction "A" provided:

> Evidence of a distribution offense absent an agreement will not suffice to support a conspiracy conviction.  If the Commonwealth's evidence only shows a distribution offense that was not a product of an agreement between two or more persons to act in concert, then you shall find the defendant not guilty of conspiracy.

7

Conspiracy is an offense independent of the object crime, and a person may be found guilty of conspiracy, in some circumstances, even if not convicted of the underlying object crime. Boyd v. Commonwealth, 236 Va. 346, 351, 374 S.E.2d 301, 313 (1988). "Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.' The offense 'is committed when the agreement is complete regardless of whether any overt act in furtherance of the commission of the substantive offense is initiated.'" Cirios v. Commonwealth, 7 Va. App. 292, 300, 373 S.E.2d 164, 167 (1988) (quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937), and Ramsey v. Commonwealth, 2 Va. App. 265, 270, 343 S.E.2d 465, 469 (1989)).

Where the granted instruction "fully and fairly instruct[s] the jury on the applicable law," there is no abuse of the trial court's discretion in ruling appellant's proffered instruction duplicative. See Eaton v. Commonwealth, 240 Va. 236, 255-58, 397 S.E.2d 385, 396-98 (1990), cert. denied, 502 U.S. 824 (1991). See also Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984), cert. denied, 469 U.S. 873 (1984).

In the instant case, Instruction "C" adequately stated the law and described the charge of conspiracy. Instruction "A" added nothing that was not covered in Instruction "C." Thus, we hold that the trial court did not abuse its discretion in instructing the jury.

**SENTENCING**

Finally, appellant argues that, at the sentencing phase, the trial court should have allowed him to present additional testimony concerning his financial obligations and community involvement. He argues this evidence was relevant to the degree of punishment appellant should have received.

Code § 19.2-295.1 provides, in pertinent part, "After the Commonwealth has introduced such evidence of prior convictions, or if no such evidence is introduced, the defendant may introduce relevant, admissible evidence related to punishment."

"[A]n appellate court will not consider an error assigned to the rejection of testimony unless a proper proffer of such testimony be made part of the record." Archie v. Commonwealth, 14 Va. App. 684, 692, 420 S.E.2d 718, 722 (1992). "[A] unilateral avowal of counsel, if unchallenged, or a mutual stipulation of the testimony expected constitutes a proper proffer . . . absent such acquiescence or stipulation, this Court will not consider an error assigned to the rejection of testimony unless such testimony has been given in the absence of the jury and made a part of the record in the manner prescribed by the Rules of Court." Whitaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977).

In the instant case, at the sentencing phase, the court allowed appellant to present evidence regarding his education, work experience, income, residence, lack of prior criminal

9

record, family financial obligations, hobbies, and church attendance.  The court limited appellant only when he began to discuss when he bought his house and where he attended church, properly finding these matters irrelevant and cumulative.  Additionally, appellant failed to adequately proffer the requested information for consideration on appeal.

Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>