COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Baker and Bray
Argued at Norfolk, Virginia


TIMOTHY WAYNE STARNES
                              MEMORANDUM OPINION[*] BY
v.        Record No. 0905-97-1     JUDGE RICHARD S. BRAY
                                   APRIL 28, 1998
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        Verbena M. Askew, Judge

              Karen M. Vannan (Buxton, Lasris & Vannan,
              P.L.C., on brief), for appellant.

              Michael T. Judge, Assistant Attorney General
              (Richard Cullen, Attorney General, on brief),
              for appellee.


     Timothy Wayne Starnes (defendant) was convicted in a bench

trial of forcible sodomy of a child less than thirteen years of

age in violation of Code § 18.2-67.1.  On appeal, defendant

complains that (1) the evidence was insufficient to support a

conviction for the offense charged in the subject indictment, and

(2) the trial court erroneously refused to postpone execution of

sentence during the pendency of this appeal.  Finding no error,

we affirm the conviction.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to the

disposition of the appeal.

     The victim of the alleged offense (child hereafter), the

eldest child of defendant and Tamara Starnes Ducy (Ducy), was

_____

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

born on July 2, 1987.  He suffers from a learning disability and Asperger's Syndrome[1] and requires specialized education.  Deborah Higginbotham, a Licensed Clinical Social Worker and "play therapist," testified that "Asperger's children" have "difficulty" with "communication," "social skills," and "express[ion]," despite "average to high average intelligence" and "excellent wrote [sic] memory."

The child's parents separated on November 8, 1991. Incidental to the attendant divorce proceedings, Ducy alleged that defendant had physically abused her and obtained an order restricting defendant to supervised visitation with the children.  However, the final decree of divorce, entered January 3, 1994, while awarding Ducy custody of the children, reserved to defendant "reasonable, unsupervised visitation."  (Emphasis added).  Ducy remarried in May, 1994.

In February, 1995, Ducy accused defendant of improper sexual contact with the child and unilaterally terminated visitation.  A related investigation by Child Protective Services, which included an interview with the child, resulted in a report dated March 21, 1995, that the allegations were "unfounded." Nevertheless, Ducy continued to deny defendant visitation, and he

---

[1]"Asperger's Disorder" is characterized by "severe and sustained impairment in social interaction and the development of restricted, repetitive patterns of behavior, interests and activities," causing "clinically significant impairment in social, occupational or other important areas of functioning." Diagnostic and Statistical Manual of Mental Disorders § 299.80 (4th ed., 1994).

petitioned the juvenile and domestic relations district court for relief in June, 1995.

Ducy thereafter notified the child's therapist that the child had reported additional prior sexual abuse by defendant. The subsequent investigation included a videotaped interview between the child, Newport News Detective William Hayes, and a representative from Social Services on July 26, 1995. Apparently, no action immediately resulted from this inquiry, and defendant was granted supervised visitation by the juvenile and domestic relations district court. However, following a third, audiotaped interview of the child by Detective Hayes on March 16, 1996, the Commonwealth initiated the instant prosecution.[2]

At trial, the child testified repeatedly that defendant "suck[ed] on [his] wee wee," demonstrating such conduct by touching the head of an adult doll to the genitalia of an anatomically correct child doll. The child further testified that he was six years old when the "[f]ifty" incidents occurred and recalled that "every time [defendant] sucks on my wee wee, he tells me not to tell." Despite confused statements to the contrary during both the videotaped and audiotaped interviews with police, the child denied that defendant had ever placed his penis in the child's mouth and remembered no sexual contact with or between other members of his family.

On appeal, we view the evidence in the light most favorable

---

[2]Both the video and audiotapes are a part of the record and have been reviewed by this Court.

to the Commonwealth and grant to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "The credibility of witnesses is a matter for the [fact finder] to decide, weighing such factors as the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and observing the things about which they testify, their interest in the outcome of the case, their bias, and if any had been shown, their prior inconsistent statements . . . ." Mullis v. Commonwealth, 3 Va. App. 564, 571, 351 S.E.2d 919, 923 (1987) (citing Zirkle v. Commonwealth, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949). A finding based "'upon the credibility of the witnesses and the weight to be given their evidence, . . . unless . . . plainly wrong, or without evidence to support it, . . . cannot be disturbed.'" Yates v. Commonwealth, 4 Va. App. 140, 143, 355 S.E.2d 14, 16 (1987) (quoting Lane v. Commonwealth, 184 Va. 603, 611, 35 S.E.2d 749, 753 (1945)).

This well established principle of appellate review simply recognizes the fact finder's unique relationship with the "'living record, as distinguished from a printed record.'" See Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989) (quoting Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955)). "The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the

conclusions of those who have seen and heard them."  Id.  Thus,

> [s]o long as a witness deposes as to facts which, if true, are sufficient to maintain [a] verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony.  If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

Id. (citing Simpson v. Commonwealth, 199 Va. 549, 557-58, 100 S.E.2d 701, 707 (1957)).

Here, defendant did not challenge the child's competency as a witness but, rather, the credibility of his trial testimony when considered together with his inconsistent and oftentimes nonsensical statements to police, the child's particular limitations, and defendant's custody dispute with Ducy.  However,

> [t]he trial court had the opportunity, which we lack, to observe and weigh [child's] biases, [his] intelligence, [his] demeanor, and [his] ability to recall and communicate facts accurately.  The trial court believed [his] testimony and found that the evidence constituted proof of guilt beyond a reasonable doubt.  The evidence was neither incredible nor so contrary to human experience as to render it unworthy of belief.  We will not, therefore, disturb the trial court's findings on appeal.

Fisher v. Commonwealth, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984).  Accordingly, we find the evidence sufficiently established defendant's violation of Code § 18.2-67.1.

Defendant further argues that the evidence failed to prove that an offense occurred between January 1, 1994 and July 1,

- 5 -

1994, as alleged in the indictment and detailed in the Commonwealth's Bill of Particulars. The evidence, viewed in the light most favorable to the Commonwealth, establishes that the crime occurred during weekend visitations with defendant when the child was six years of age. Such visitation commenced in January, 1994, and continued through February, 1995. The child was seven years old on July 2, 1994. Therefore, the evidence sufficiently established that the offense was committed within the specified time span.

Lastly, defendant complains that the trial court erroneously refused to suspend the execution of sentence during the pendency of this appeal. Finding this issue moot, we decline to address it.

Accordingly, we affirm the conviction.

Affirmed.