COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Lemons
Argued at Salem, Virginia


SANDY JEAN ROBERTS

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1594-98-3          JUDGE SAM W. COLEMAN III
                                         JUNE 8, 1999
COMMONWEALTH OF VIRGINIA



            FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                  J. Samuel Johnston, Jr., Judge

            Grady W. Donaldson, Jr. (Schenkel &
            Donaldson, P.C., on brief), for appellant.


            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General;
            Richard B. Campbell, Assistant Attorney
            General, on brief), for appellee.



      Sandy Jean Roberts was convicted in a bench trial of felony

abuse and neglect of her child in violation of Code § 18.2-371.1.

On appeal, she contends that the evidence was insufficient to

support a finding that she committed a willful act or omission in

violation of Code § 18.2-371.1.  We disagree and affirm the

conviction.

                          BACKGROUND

      When a defendant challenges the sufficiency of the evidence

to convict, we review the evidence, and all reasonable inferences

_____

      *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

fairly deducible therefrom, in the light most favorable to the Commonwealth.  See Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 385 (1984).

So viewed, the evidence proved that Roberts noticed injuries to her son, Melvin, shortly before 6:00 a.m. on August 29, 1996. The four-year-old child had two black eyes, bruises on his head and back, a split lip, a bald spot in the back of his head where it appeared hair had been pulled out, an abrasion on his chin, and blood coming out of his ear.  Roberts administered ice and Tylenol to the child.  Roberts discussed with her boyfriend, Terry Creasy, and a visiting friend, Theresa Silby, whether to take the child to the hospital.  Silby offered to do so, but Creasy advised against it warning that it would inevitably arouse the suspicions of social services.  Creasy remained at the residence all day on August 29.

Roberts testified that Creasy had beaten her during the evening of August 28, and she said that she "was very scared" and "felt it was [in her] best interest to go along with what he said."

On the morning of August 30, Creasy left for work.  Creasy advised Roberts not to open the door for anyone and not to take the child to the hospital.  Fearing that Creasy "might be at the hospital," and not knowing "who to trust," Roberts drove to a store to call her mother around 4:30 or 5:30 p.m.  Roberts left a message asking her mother to take her and the injured child to the

-

doctor.  Roberts' mother testified that Roberts left a message asking her to take Melvin to the hospital.  However, the mother testified that Roberts called in the morning rather than the afternoon.

When Roberts returned to her residence, around 5:30 p.m., a police investigator and a social services investigator were there.  On the investigators' advice, Roberts packed her clothing and the children's clothing into Silby's vehicle and drove the children to her sister's house.  When Roberts' sister refused to watch Roberts' other children, Silby agreed to take Melvin to the hospital.  At 11:00 p.m. on August 30, the hospital admitted Melvin -- approximately forty hours after Roberts first noticed the injuries.

Melvin underwent a standard physical examination and a CAT scan.  Doctors noted multiple contusions, black eyes, an abrasion, and the presence of blood in the auditory canal.  Melvin had no fractured bones, and the CAT scan revealed no intracranial bleeding or swelling.  Dr. Frederick Sloan, who examined Melvin, testified that it was medically necessary for the child to be seen by a physician and that the injuries indicated "a fair amount of trauma."  Doctors discharged Melvin from the hospital August 31, at 12:40 a.m.

## ANALYSIS

As previously stated, and pursuant to familiar principles, we view the evidence in the light most favorable to the Commonwealth.

-

Additionally, the credibility of the witnesses and the weight accorded their testimony are matters solely within the province of the fact finder.  See Lane v. Commonwealth, 184 Va. 603, 610-11, 35 S.E.2d 749, 752 (1945).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The trial court convicted Roberts for violating Code § 18.2-371.1 and sentenced her to five years, two of which were conditionally suspended.  The record does not specify whether the trial court convicted her under subsection (A) or (B) of Code § 18.2-371.1.  However, the sentence imposed by the trial court is within the range of the lesser offense of subsection (B) -- a Class 6 felony.  Therefore, on review, if we find evidence sufficient to convict under subsection (B), we affirm the conviction of the trial court.

We find that the evidence was sufficient for the trial court to convict Roberts of felony neglect of a child under Code § 18.2-371.1(B).  Roberts' forty-hour delay in seeking medical attention for her son Melvin, after recognizing that he suffered extensive abuse, constituted a "willful . . . omission in the care of a child . . . so gross, wanton and culpable as to show a reckless disregard for human life."  Code § 18.2-371.1(B).

-

Roberts contends that her fear of Creasy justified her delay in seeking the medical attention for Melvin. She does not assert that the facts are not sufficient to show that she failed or delayed in getting medical care for her son. She argues, however, that the omission was not willful but rather was because she feared for her own safety and well-being. Although akin to the defense of duress or coercion, Roberts claims that she did not possess the requisite intent to willfully fail or omit to obtain medical care for her son. However, viewed in the light most favorable to the Commonwealth, the evidence proved that Creasy "advised" Roberts against seeking medical attention for Melvin. He did not prevent Roberts from doing so. There was no evidence that Creasy threatened Roberts or that he physically prevented her from seeking medical attention for Melvin. Although Roberts testified that she feared Creasy and that he had beaten her the night before, the evidence showed that on the morning of August 30, despite Creasy's departure from the residence, Roberts continued to delay in acting on behalf of her abused child until late in the afternoon. Ultimately, Roberts did not take effective steps toward obtaining medical attention until after investigators advised her to do so.

Accordingly, we find the evidence sufficient to support the trial court's finding that Roberts' "willful . . . omission in the care of [her] child was so gross, wanton and culpable as to

-

show a reckless disregard for human life," in violation of Code § 18.2-371.1(B).  Thus, we affirm Roberts' conviction.

Affirmed.

-