COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Agee
Argued at Salem, Virginia


SONJA FIZER HICKSON
                                    MEMORANDUM OPINION* BY
v.   Record Nos. 1205-01-3 and      JUDGE G. STEVEN AGEE
            1869-01-3                   APRIL 23, 2002

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                   James W. Updike, Jr., Judge

            Melissa W. Friedman (Anthony F. Anderson; Law
            Offices of Anthony F. Anderson, on briefs),
            for appellant.

            Kathleen B. Martin, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     Sonja Fizer Hickson (Hickson) was convicted in a Bedford

County circuit court bench trial of involuntary manslaughter, in

violation of Code § 18.2-36, and felony child abuse, in

violation of Code § 18.2-371.1(A). The trial court sentenced

Hickson to a term of five years incarceration on each

conviction, to be served concurrently and suspended after twelve

months in jail. On appeal, Hickson contends the Commonwealth's

evidence was not sufficient to convict her of either charge.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

For the following reasons, we disagree and affirm the convictions.

## I. BACKGROUND

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, only those facts necessary to a disposition of this appeal are recited.

## A. THE INCIDENT

Hickson provided daycare services in her home for several children, including thirteen-month-old Frances "Fran" Vermillion ("Fran" or "the child"). On February 12, 1998, Fran arrived at Hickson's house just prior to 8:00 a.m. Fran had some congestion but was otherwise in normal health. At approximately 8:05 a.m., Hickson telephoned the child's mother and said, "something's wrong with Fran," and that the child had fallen and was "acting funny." Hickson placed a telephone call to 9-1-1 at 8:09 a.m. She informed the dispatcher that the child had tumbled "face first" from a chair.

The mother immediately returned to Hickson's house and found her daughter lying limp on a child-size table in the kitchen. She noticed her child had a small bump over her left ear. When asked what had happened, Hickson said Fran had been sitting in a chair at the child's table when she administered

-

cough syrup to the child.[1]  When Hickson turned around to place the bottle of cough syrup on the counter she heard a "thump" and found Fran lying on the kitchen floor.  Hickson said she picked up the child who cried and then went limp.

When paramedics arrived at Hickson's house at 8:23 a.m., they observed Fran to have a slow, irregular pulse, an increased blood pressure and clinched teeth, an indication of a severe head injury.  Other than the bump over the child's left ear, the paramedics observed no other body trauma, including no cuts or bruises on the child's torso, arms or legs.

Fran was transported to the hospital where surgery was performed to treat a medium-sized blood clot on the left side of her brain.  The child's prognosis post-surgery was poor, and her condition deteriorated subsequently to "an unsurvivable injury." The child's parents decided to remove Fran from the life support system, and she died a short time later.

### B.  THE INVESTIGATORS' INTERVIEWS

Several investigators interviewed Hickson after Fran's death.  On February 13, 1998, Lieutenant Gardner of the Bedford County Sheriff's Department interviewed Hickson who informed him

---

[1] The medicine was an adult cough syrup, which was not recommended, even in small doses, for children under the age of 12 years old.  Hickson administered the cough syrup without the authorization of the child's parents and contrary to the express written agreement between the parents and herself.

-

that the child had fallen from a chair.  She did not offer any further explanation.

Anne Shupe, a child protective services investigator, interviewed Hickson on March 19, 1998.  Hickson informed Shupe that the child had arrived at her house on the morning of the incident and "fussed a little bit."  She gave Fran some cough syrup and then heard the child fall as she put the medicine away after having rinsed some dishes at the sink.  She picked the child up and then Fran "went limp" in her arms.

On February 17, 1999, Special Agent McDowel of the Virginia State Police interviewed Hickson.  Initially, Hickson reiterated her claim that the child had fallen from a small chair in the kitchen.  Later, however, Hickson said Fran had hit her head on the floor four times.  First, when the child threw herself onto the floor after being administered the cough syrup.  Second, the child threw herself backwards when her diaper was being changed.  Next, when Hickson picked the child up, she "didn't have a good hold on her and . . . dropped her."  Lastly, Hickson picked up the child, carried her into the kitchen and "she [unexplainably] fell in there, too."

## C.  PHYSICIAN OPINIONS

Dr. Hugh Craft, director of pediatric intensive care at Carilion Community Hospital, treated Fran.  He opined she suffered a severe head injury caused by blunt force impact.  Further, he opined to a reasonable degree of medical certainty,

-

that this injury could not have been caused by falling from a height of twenty-seven inches to a wood floor covered by linoleum, by falling backward onto the floor from a sitting position, by falling to the floor from the arms of a standing adult, or by the cumulative effect of such falls. A "serious application of force, [and] not repetitive, relatively small applications of force . . . would cause this kind of injury." It was his testimony that a fall from a height in excess of ten feet would cause the massive degree of injury indicated.

Assistant Chief Medical Examiner Dr. William Massello performed Fran's autopsy. Dr. Massello's initial diagnosis was that Fran died from a blunt impact to the head resulting in an acute subdural hematoma, with the injuries being caused by one or more impacts to the head. However, after reviewing the paramedic's report, which detailed the bump observed on the left side of the child's head, Dr. Massello determined there had been a separate impact to the left side of the head. The presence of two separate impact sites led Dr. Massello to opine that a non-accidental injury was likely, arising from "pushing, slamming, dropping, blows to the head, smacking the head, [or] kicking."

Dr. Massello acknowledged the injuries could have resulted from a fall of less than ten feet, but he qualified that opinion by noting that (1) the severity of the injuries rarely happen from falling backward from a seated position and (2) other

-

visible injuries would have resulted as well.  He reasoned the fact that the impacts occurred within a "very brief period of time" was "more consistent with some purposeful manipulation of some type [to] the child, [such as] throwing, pushing or kicking."  While Dr. Massello testified that a fall from forty-eight inches could be consistent with the injuries he found at the autopsy, "things like that happen about one to two percent of the time."

## D.  THE TRIAL COURT'S FINDINGS

The trial court did not find any evidence that Hickson acted with malice.  Instead, it found that the Commonwealth had "proven beyond a reasonable doubt that the death of this child resulted accidentally, but as a result of criminal negligence" and convicted Hickson of involuntary manslaughter.  In addition, the trial court convicted Hickson of felony child abuse.

## II.  ANALYSIS

On appeal, Hickson contends the evidence was insufficient to convict her of involuntary manslaughter and felony child abuse.  We disagree.

## A.  STANDARD OF REVIEW

On review of a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, the prevailing party, and grant to it all reasonable inferences fairly deducible therefrom.  See

-

Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998).  The credibility of the witnesses and the weight accorded their testimony are matters solely within the province of the fact finder.  See Lane v. Commonwealth, 184 Va. 603, 610-11, 35 S.E.2d 749, 752 (1945).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citations omitted).

B.   INVOLUNTARY MANSLAUGHTER

Hickson contends the trial court erred in convicting her of involuntary manslaughter when "there was no direct evidence of gross, wanton, or culpable conduct by [her] that evidence a reckless disregard for human life" and the circumstantial evidence relied upon by the Commonwealth "simply [did] not exclude [her] innocence."  We disagree and affirm the conviction.

> "Involuntary manslaughter is defined as the accidental killing of a person, contrary to the intention of the parties, . . . during the improper performance of some lawful act.  The 'improper' performance of the lawful act, to constitute involuntary manslaughter, must amount to an unlawful commission of such lawful act, not merely a negligent performance.  The negligence must be criminal negligence.  The accidental killing must be the proximate result of a lawful act performed in a manner 'so gross,

-

> wanton, and culpable as to show a reckless
> disregard of human life.'"

Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992) (internal citations omitted).

The elements of involuntary manslaughter may be proven by circumstantial evidence. See Dowden v. Commonwealth, 260 Va. 459, 536 S.E.2d 437 (2000).

> "When the evidence is wholly circumstantial
> . . . all necessary circumstances proved
> must be consistent with guilt and
> inconsistent with innocence and exclude
> every reasonable hypothesis of innocence.
> The chain of necessary circumstances must be
> unbroken. Nevertheless, it is within the
> province of the jury to determine what
> inferences are to be drawn from proved
> facts, provided the inferences are
> reasonably related to those facts."

Id. at 468, 536 S.E.2d at 441 (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976)). Circumstantial evidence is just as competent and is entitled to as much weight as direct evidence, provided the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt. Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983), cert. denied, 465 U.S. 1109 (1984). The Commonwealth is only required to exclude the hypotheses of innocence that flow from the evidence. Goins v. Commonwealth, 251 Va. 442, 467, 470 S.E.2d 114, 130, cert. denied, 519 U.S. 887 (1996).

-

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citation omitted). Furthermore, on appeal, Hickson's varying accounts of how the child was injured must be viewed in the light most favorable to the Commonwealth. When so viewed, these claims may be interpreted as mere fabrications to conceal guilt. See Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

To prevail on appeal, Hickson must show that the facts, as established in the record and viewed in the light most favorable to the Commonwealth, would not permit a reasonable fact finder to reject her proposed hypothesis of innocence. We find that Hickson has failed to meet this burden. The fact that the child's injuries occurred in a short period of time while she was in the sole care of Hickson, when considered with the overwhelming medical evidence and physician testimony supports the trial court's verdict and excludes every reasonable hypothesis of innocence as presented by the evidence.

-

Hickson seems to base her hypothesis of innocence upon Dr. Massello's testimony that it was possible for a fall from a height of less than four feet to have caused Fran's fatal injury.  However, the medical examiner limited that possibility to a "one to two percent" chance.  "The other ninety-eight to ninety-nine percent of the time it's from kicks, slams, blows . . . automobile accidents, falling off roofs, things like that."

As the trial court found, based on Hickson's own rendition of Fran's chain of injuries, only the last impact, a fall from a child's table, could have caused the fatal subdural hematoma.

Dr. Craft opined that the injuries could not have been caused by the child hitting her head on Hickson's kitchen floor after falling backward onto the floor from a sitting position as initially claimed by Hickson.  Dr. Craft further opined that if the injuries had been caused by a fall, the fall would have had to occur from a height in excess of ten feet.  Additionally, while Dr. Massello's initial review of the child's body allowed for the possibility that the injuries were caused by the child falling from a chair, his opinion after reviewing all the evidence was that the injuries were more likely caused by another means, especially since the child suffered no other injuries or bruises.  Dr. Massello could not determine the exact means that caused the injuries, but he opined that the injuries were likely caused by "pushing, slamming, dropping, blows to the

-

head, [or] kicking," "some purposeful manipulation . . . of the child."  The physicians' opinions that the injuries could not have been caused by the child falling onto or throwing herself backward onto the floor casts doubt upon all of Hickson's multiple versions of the events that occurred.  See Christian v. Commonwealth, 221 Va. 1078, 1081, 277 S.E.2d 205, 208 (1981) (trial court entitled to accept doctor's opinion that it was "extremely unlikely" defendant's child had been injured as defendant suggested).

We hold that the evidence of record, when considered as a whole, is fully sufficient to support the trial court's finding that Hickson was guilty of involuntary manslaughter.  "'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'"  Dowden, 260 Va. at 470, 536 S.E.2d at 443 (quoting Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979), cert. denied, 445 U.S. 972 (1980)).  We, therefore, affirm the conviction for involuntary manslaughter.

## C.  FELONY CHILD ABUSE

Hickson also challenges the sufficiency of the evidence to convict her of felony child abuse.  She contends the Commonwealth failed to prove she acted willfully.  We disagree.

Code § 18.2-371.1(A) provides, in pertinent part, that "[a]ny . . . person responsible for the care of a child under

-

the age of eighteen who by willful act or omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child shall be guilty of a Class 4 felony."

> "Willful" generally means an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful. See Richardson v. Commonwealth, 21 Va. App. 93, 99, 462 S.E.2d 120, 123 (1995). The term denotes "'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.'" Snead v. Commonwealth, 11 Va. App. 643, 646, 400 S.E.2d 806, 807 (1991) (quoting United States v. Murdock, 290 U.S. 389, 394 (1933)). The terms "bad purpose" or "without justifiable excuse," while facially unspecific, necessarily imply knowledge that particular conduct will likely result in injury or illegality. See Murdock, 290 U.S. at 395-96.

Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999).

The factual evidence proved that the child sustained injuries during a short time frame in which she was exclusively within the care of Hickson. The principal issue at trial was whether those injuries were the result of a willful act or omission. Hickson argues that the Commonwealth's circumstantial evidence on this element supports a reasonable hypothesis of innocence and, therefore, the evidence does not rise to the level of proof beyond a reasonable doubt. The suggested reasonable hypothesis of innocence is that the injury resulted from an accident. As previously discussed, in order to prevail

-

on appeal, Hickson must show that the facts, as established in the record and viewed in the light most favorable to the Commonwealth, would not permit a reasonable fact finder to reject her proposed hypothesis.

Here, the evidence proved that the child sustained injuries during the time she was in Hickson's sole care. The evidence further established that the injuries were inconsistent with a simple fall from a chair or the child throwing herself onto the floor. Instead, to a reasonable degree of medical certainty, the injuries were consistent with a fall from a height in excess of ten feet or associated with abuse. Further, the evidence proved that Hickson presented multiple accounts regarding how the child sustained the injuries.

Considering the size and age of the child and amount of force necessary to cause the child's injuries, the trial court could reasonably reject the hypothesis that an accident caused the child's injury. This is particularly true, as noted above, in the way Hickson described Fran's injury to have occurred. The trial court was entitled to determine that the medical opinions excluded an accident as a reasonable explanation for the injury. The trial court was further entitled to disbelieve Hickson's account and assume she was lying to conceal her guilt.

The trial court could reasonably determine from all the circumstances that Hickson intentionally inflicted the injury upon the child to the exclusion of any other hypothesis. "The

-

facts . . . admitted of inferences of guilt more probable and natural than any reasonable hypothesis of innocence, and warranted" the trial court to reject the hypothesis of accidental injury.  Toler v. Commonwealth, 188 Va. 774, 782, 51 S.E.2d 210, 214 (1949).

The Commonwealth presented sufficient evidence for the trial court to exclude any hypothesis that the injury resulted from an accident and that Hickson acted "willfully" within the meaning of Code § 18.2-371.1(A).  Accordingly, the conviction is affirmed.

Affirmed.

-