## Richmond

ALFRED LYNWOOD LEWIS v. COMMONWEALTH OF VIRGINIA.

January 18, 1971.

Record No. 7331.

Present, All the Justices.

*W. M. Lewis,* for plaintiff in error.

*Vann H. Lefcoe, Assistant Attorney General (Andrew P. Miller, Attorney General; C. Tabor Cronk, Assistant Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

On September 30, 1968, Alfred Lynwood Lewis, the defendant, was convicted by a jury of grand larceny, and his punishment was fixed at five years in the penitentiary. Upon his petition for a writ of error, we discovered that the order appealed from failed to show that judgment had been pronounced and sentence imposed in accordance with the jury's verdict. Since the order was not a final judgment, we remanded the case on June 17, 1969, for further proceedings.

On July 10, 1969, the circuit court entered *nunc pro tunc* a final order amending its previous order to show that, in fact, judgment had been pronounced and sentence imposed in the case immediately after return of the jury's verdict on September 30, 1968. Upon a new petition, the defendant was granted a writ of error.

While the defendant contends that he was denied his constitutional right to a speedy trial because of the delay in entry of final judgment following the jury's verdict, we find this contention unworthy of discussion and dismiss it out of hand. *Newsom v. Commonwealth*, 207 Va. 844, 847-48, 153 S.E.2d 235, 237 (1967). We turn, therefore, to the real question presented, and that is whether the evidence was sufficient to sustain the defendant's conviction of grand larceny.

According to familiar principles, the evidence will be stated and viewed in the light most favorable to the Commonwealth.

The evidence shows that Maggie Harris, the defendant's great aunt, resided with her sister, who was also the defendant's grandmother, in a house at Cluster Springs, Virginia. The defendant was a frequent visitor in the house and kept "some of his things there."

On August 8, 1968, Mrs. Harris and her sister left Cluster Springs to visit a sick relative in Omega, Virginia. Since she planned to be away overnight and because she kept her money in a pocketbook under a pillow on her bed, Mrs. Harris locked both doors to the house. She also "took a chair and put it under the knob of the [kitchen] door and . . . put some wood in [the chair]."

Upon returning home the next evening, August 9, Mrs. Harris was informed by her young niece, who lived next door, that the defendant had been seen in the house during her absence. She then "went right . . . to the bed and looked under [her] pillow and [her] money was gone."

William H. Walker, a great nephew of Mrs. Harris, testified that he saw the defendant in the Harris residence on the afternoon of August 9. The defendant appeared to be shaving, and he stayed no longer than twenty minutes. His presence in the house and his actions did not arouse William's suspicions, since the witness had seen the defendant there many times before. William did state that he observed no one else in or around the house during his great aunt's absence.

Upon discovering her loss, Mrs. Harris secured a warrant for the defendant's arrest. The warrant, like the later indictment,

recited that the defendant did "unlawfully and feloniously . . . take, steal and carry away $100 in U. S. Currency."

The defendant was arrested at 10:15 p.m. on August 9 at a bowling alley in South Boston. He was searched, and a deputy sheriff took from him a $5 bill which he was holding in his hand. A further search of his person at the jail was unproductive. However, while he was being led to his cell, the deputy "saw [some] money as it fell from somewhere about [the defendant] and it rolled on the floor." This additional money consisted of four $20 bills, two $5 bills, and $ .80 in change, bringing the total amount taken from the defendant to $95.80.

The defendant, testifying in his own behalf, stated that he had gone to the Harris home on the afternoon of August 9 "to clean up and take a shave." He said that he "turned the knob" on the back door "and the door opened." He denied taking Mrs. Harris' money, and he claimed that part of the money seized from him was won in a pool game and the rest was borrowed from a "fellow named Charlie."

We are of opinion that the evidence was not sufficient to sustain the defendant's conviction. In the first place, while the defendant was charged with stealing $100 in United States currency, the minimum amount for grand larceny, it was not shown that that was the sum taken from the possession of Mrs. Harris. All she testified to was that she had "money" in the pocketbook under her pillow and that when she returned from her visit, "some money" was missing. So the evidence was insufficient to make out a case of grand larceny.

But aside from that, the evidence tending to show that the defendant was involved in the theft was purely circumstantial, and it was not sufficient to establish that he was the criminal agent. The evidence showed only that the defendant had the opportunity to commit the crime and that he had on his person when arrested a sum of money approximating the amount charged in the warrant and the indictment. This is not the sort of circumstantial evidence which forges the unbroken chain necessary to establish the culpability of an accused and which is consistent with guilt and inconsistent with innocence. *Webb* v. *Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

The judgment appealed from must, therefore, be reversed, and the case remanded for further proceedings if the Commonwealth be so advised.

*Reversed and remanded.*