COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


DAVIS RANDOLPH BROWN
                              MEMORANDUM OPINION[*] BY
v.   Record No. 0107-97-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      JUNE 16, 1998
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                  Arthur W. Sinclair, Judge Designate

              David L. Heilberg for appellant.

              Richard B. Campbell, Assistant Attorney
              General (Mark L. Earley, Attorney General;
              John K. Byrum, Jr., Assistant Attorney
              General, on brief), for appellee.



     Davis Randolph Brown (appellant) was convicted in a bench

trial of three counts of breaking and entering with the intent to

commit larceny in violation of Code § 18.2-91 and three counts of

petit larceny in violation of Code § 18.2-96.  Appellant contends

the evidence was insufficient to prove beyond a reasonable doubt

that he committed any of the offenses charged.  We find no error

and affirm.

                                I.

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  The only evidence presented at trial was the testimony of the three larceny victims, Muscoe Garnett, Mary Scott Kaiser and Christopher Spanos, and one additional witness, John McAllister.

At approximately 8:00 a.m. on January 17, 1996, John McAllister, a University of Virginia student, was asleep in his loft bed at the Zeta Psi fraternity house.  He awoke when an unknown man, whom he identified at trial as appellant, opened the door to his room, walked in, and asked him if he had tickets to the Virginia-North Carolina basketball game that night.  McAllister responded that he did not.  Appellant picked up McAllister's wallet from a desk near the door, turned away from McAllister, and sifted through the contents.  He then wrote down a number where he said McAllister could reach him if he "got wind of any tickets," and left the room.  McAllister came down from the loft, checked his wallet and found the contents, including three dollars, intact.  Appellant was not charged with any crimes relating to this incident.

Immediately after this encounter, McAllister walked down the hall of the fraternity house past the room of Muscoe Garnett.  As he passed, McAllister heard Garnett talking to someone whose voice sounded "like the same person that was just in my room."

At approximately 8:30 a.m. that day, Muscoe Garnett was in his loft bed in his room with the door closed.  A man matching

appellant's description entered Garnett's room and asked him for tickets to the North Carolina basketball game. Garnett answered that he had none, and the intruder "bent down" in the vicinity of where Garnett had left his pants on the floor under the end of the loft. After the man left, Garnett climbed down from the loft, checked his pants pocket, and found his wallet, containing thirty to forty dollars, missing. He confronted the intruder, who denied having taken the wallet. The intruder left the fraternity house, and Garnett called police. Garnett was unable to identify appellant as the man in his room.

At approximately 11:25 a.m. on the following day, January 18, 1996, Mary Scott Kaiser left her office in Clark Hall at the University of Virginia and walked to an adjacent office suite. Her office was "one of the back offices in a suite of offices. To get there from the hall, you would have to go through one central . . . door and then back [along] a hallway to my office and through another door." Kaiser left her purse under a ledge behind a box of paper next to her desk, and she closed both the door to her office and the door to her office suite. No one else was in her office suite at that time. When Kaiser returned approximately five minutes later she encountered a man, whom she identified at trial as appellant, leaving her office suite. Appellant asked her where the buildings and grounds offices were located. Kaiser gave him directions, but as he left she realized those offices were closed at that time, and she became

suspicious. She immediately checked the contents of her purse and discovered her wallet, containing twenty dollars, missing.

Between 5:30 and 6:00 a.m. the following day, January 19, 1996, University of Virginia student Christopher Spanos, his roommate, and three guests were asleep in Spanos' bedroom on the third floor of the Kappa Sigma fraternity house, which was located next door to the Zeta Psi house. The bedroom door was closed. Spanos awoke to find a man, whom he identified at trial as appellant, standing at his desk, which was within arm's reach of his bed. Spanos confronted the intruder and asked what he was doing. Appellant said he was "a friend of Dave's from downstairs." When Spanos informed him that there was no "Dave" living downstairs, appellant "backed up" and claimed to be "a homeless guy looking for a place to stay." Spanos replied that he could not stay in the fraternity house, and appellant left the room. When Spanos checked, he discovered that his wallet and $7 were missing.

The trial court found that "the Commonwealth's evidence meets the burden of proof" and convicted appellant of three counts of statutory burglary and three associated petit larcenies.

## II.

On appeal, "[w]e may not disturb the trial court's judgment unless it is 'plainly wrong or without evidence to support it.'" Barlow v. Commonwealth, 26 Va. App. 421, 429, 494 S.E.2d 901,

904 (1998) (citation omitted).  In addition, "the inferences to be drawn from proven facts are matters solely for the fact finder's determination."  Marshall v. Commonwealth, 26 Va. App. 627, 633, 496 S.E.2d 120, 123 (1998).

"Proof of the elements of an offense . . . includes proof of the corpus delicti."  Watkins v. Commonwealth, 238 Va. 341, 350 n.3, 385 S.E.2d 50, 55 n.3 (1989), cert. denied, 494 U.S. 1074 (1990).  "Where the charge is merely larceny, the corpus delicti is the larceny of the goods.  Where the charge is breaking and entering with the intent to commit larceny, the corpus delicti is the breaking and entering with that intent."  Drinkard v. Commonwealth, 163 Va. 1074, 1083, 178 S.E. 25, 28 (1935).  "'Direct evidence is not essential to prove the corpus delicti. It may be proved by circumstantial evidence.'"  Fisher v. Commonwealth, 16 Va. App. 447, 452, 431 S.E.2d 886, 889 (1993) (citation omitted).

Appellant asserts that because the police never recovered the stolen wallets or the money, either in appellant's possession or elsewhere, the Commonwealth failed to establish that the charged crimes had been committed.  This argument is without merit.  Proof that appellant was in exclusive possession of recently stolen property would be necessary to invoke the larceny presumption, but the Commonwealth does not rely upon the presumption in the instant case.  Recovery of the stolen property is not essential to establish the corpus delicti of larceny.  See

id.

In the instant case, the testimony of Garnett, Spanos and Kaiser that their money and wallets were taken from their rooms and office, respectively, was sufficient to establish the corpus delicti of larceny, and the undisputed evidence that the intruder entered through closed doors at each location at the time of the theft was sufficient to prove the three offenses of statutory burglary.

Appellant also contends the evidence established only opportunity and the Commonwealth failed to exclude the possibility that some other person was the criminal agent. We disagree.

Where the evidence is wholly circumstantial, "'[t]he circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt.'" Betancourt v. Commonwealth, 26 Va. App. 363, 375, 494 S.E.2d 873, 879 (1998) (quoting Sam v. Commonwealth, 13 Va. App. 312, 319, 411 S.E.2d 832, 836 (1991)). "'[A]ll necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Fisher v. Commonwealth, 16 Va. App. 447, 452, 431 S.E.2d 886, 889 (1993) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)). The Commonwealth need not "exclude every possible theory or surmise," but must exclude those hypotheses "'which flow from the evidence

-6-

itself.'" Cantrell v. Commonwealth, 7 Va. App. 269, 289-90, 373 S.E.2d 328, 338-39 (1988) (citation omitted). "Further '[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Shurbaji v. Commonwealth, 18 Va. App. 415, 423, 444 S.E.2d 549, 553 (1994) (quoting Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979), cert. denied, 445 U.S. 972 (1980)). Additionally, although opportunity alone cannot support a conviction, "[o]pportunity is always a relevant circumstance . . . and when reinforced by other incriminating circumstances, may be sufficient to establish criminal agency beyond a reasonable doubt." Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981).

The facts presented here, taken as a whole, were sufficient to prove appellant's criminal agency beyond a reasonable doubt. The evidence placed appellant in the office or rooms from which the property was taken immediately before the thefts were discovered.[1] He had no rationale for being in the Garnett and Spanos bedrooms and rifling through the victims' wallets at 6:00 a.m. or 8:00 a.m. Nor did he have a reason for having

---

[1]This fact distinguishes the instant case from Lewis v. Commonwealth, 211 Va. 497, 498-99, 178 S.E.2d 530, 531-32 (1971); Varker v. Commonwealth, 14 Va. App. 445, 447-48, 417 S.E.2d 7, 9 (1992); and Thomas v. Commonwealth, 187 Va. 265, 270-72, 46 S.E.2d 388, 390-91 (1948), in which the evidence proved the defendants' presence at the crime scenes but could not establish the time with any certainty.

entered Kaiser's office suite through a closed door.  Further, the trial court could reasonably infer that, when confronted, appellant gave each victim a false explanation of his presence and intentions at the time of each theft.  The trial court was not plainly wrong when it concluded that appellant was the person who broke and entered the premises and took the missing items.

<u>Affirmed.</u>

Benton, J., dissenting.

The principle is well established that "mere opportunity to commit an offense raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.'" Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981) (citation omitted). "While a conviction may properly be based on circumstantial evidence, suspicion or even probability of guilt is not sufficient. There must be an unbroken chain of circumstances proving the guilt of the accused to the 'exclusion of any other rational hypotheses and to a moral certainty.'" Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971) (citation omitted). "Suspicious circumstances, '"no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction."'" Burchette v. Commonwealth, 15 Va. App. 432, 438-39, 425 S.E.2d 81, 86 (1992) (citations omitted).

The evidence proved that Mary Scott Kaiser left her office for about five minutes. The suite of offices leading into her office and her office were unlocked while she left the premises. The evidence also proved that Kaiser never saw Brown enter or exit her personal office. When Kaiser saw Brown coming out of the suite of offices where her office was located, Brown asked Kaiser where the maintenance department was located. Kaiser

testified that up until two months prior to that time, the maintenance department had been located on the basement floor of Kaiser's building. Kaiser also testified that although one has to travel through the suite of offices to leave her office, there are twelve to fifteen different ways to get out of the building from her office.

Muscoe Garnett was unable to identify Brown in a photo lineup and did not identify him at trial. Garnett testified that he could not see what the man in his room was doing but he was sure the man was bent over in the area where Garnett had discarded his pants. Garnett did not see the man with his wallet. Garnett's bedroom door was not locked. Garnett also testified that the front door of the fraternity house has no lock and that "people came in pretty freely."

Christopher Spanos testified that he was asleep when the man entered his room. Spanos testified that he did not see the man with his wallet. Although he identified Brown at trial as the man who was in his room, at the preliminary hearing he was not sure that Brown was the man in his room. Other people, who attended a party in the fraternity house the night before, were asleep in Spanos' room. Spanos also testified that his door was shut but not locked and that the doors to the fraternity house remained unlocked. Fraternity pledges recovered Spanos' wallet. However, no evidence proved when or where the wallet was found.

Both Spanos and Garnett were tentative in their

identifications of Brown as the man they saw in their respective bedrooms.  The evidence also proved that the fraternity houses, the bedrooms, the office suite, and Kaiser's office were unlocked and that other people had access to these locations.  Thus, other individuals had an opportunity to steal the missing property. Simply put, the Commonwealth failed to exclude the reasonable hypothesis that someone else was the criminal agent responsible for the larceny and burglary offenses.  Therefore, I would hold that the Commonwealth failed to prove beyond a reasonable doubt that Brown committed these offenses, and I would reverse Brown's convictions.