# CRIMINAL CASES.

## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

### JEFF GRAHAM v. COMMONWEALTH.

#### September 18, 1924.

1. CRIMINAL LAW—*Corpus Delicti—Burden of Proof.*—It is elementary that in a criminal prosecution it is incumbent upon the Commonwealth to prove the commission of the offense· by the accused, by proof which satisfies the jury beyond a reasonable doubt.

2. WITNESSES—*Inconsistent Statements—Guarded Expressions—Case at Bar.*—In a prosecution for transporting liquor that a witness stated in one breath that he was "sure" the man he saw carrying "something" under each arm was the accused and in the next breath that he was not positive is no proof of inconsistent statements. It was but the guarded expression of a very cautious person.

3. CRIMINAL LAW—*Corpus Delicti—Circumstantial Evidence.*—Circumstantial evidence may be as potent in proving the *corpus delicti* and the criminal agent as direct evidence.

4. CIRCUMSTANTIAL EVIDENCE—*Admissibility—Weight.*—Circumstantial evidence is legal and competent in criminal cases, and, if it is of such a character as to exclude every reasonable hypothesis, other than that the defendant is guilty, is entitled to the same weight as direct testimony.

5. INTOXICATING LIQUORS—*Transportation—Identity—Evidence Sufficient to Support Conviction.*—A witness testified that when he first went to the house of the accused he smelt corn whisky on his breath. Later a man was seen coming from a hollow near the barn of accused; he was walking in a stooping position, and was carrying something under each arm; he went to a stump, was seen working with his hands, then left the stump, and went into the house of the accused. No other man than the accused was seen at or near the house. The man at the stump had on the same kind of clothes as the accused. At the stump, where the man was working, two half-gallon jars of whisky were found. The premises, where the liquor was found, belonged to the accused.

   *Held:* That this evidence was sufficient to support a verdict of guilty of transportation; moreover there was the evidence of a witness that he was sure that the man he saw carrying something under each arm was the accused.

6.  INTOXICATING LIQUORS—*Fines—Costs—Sentence to Road Force for Failure to Pay Fines and Costs.*—In the instant case, a prosecution for unlawfully transporting liquor, the trial court did not err in sentencing petitioner to an additional three months on the State convict road force in the event of his failure to pay the costs and the fine imposed. *Kilgore* v. *Commonwealth,* 139 Va. 581, 123 S. E. 534. *Gilreath* v. *Commonwealth,* 136 Va. 709, 118 S. E. 100.

Error to a judgment of the Circuit Court of Scott county.

*Affirmed.*

The opinion states the case.

*S. H. Bond,* for the plaintiff in error.

*John R. Saunders, Attorney General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

The plaintiff in error was tried and convicted in the Circuit Court of Scott county upon an indictment charging him with a violation of the prohibition law.

The jury fixed the punishment of the accused at a fine of two hundred dollars and confinement in the county jail for a period of three months.

The motion to set aside the verdict being overruled, the trial court proceeded according to law to pronounce the following sentence upon the accused:

"Therefore, it is considered by the court that the defendant, Jeff Graham, be fined the sum of two hundred ($200.00) dollars and be confined in the county jail of this county for the period of three months, and pay the costs of this prosecution.    But in lieu of said confinement in jail, the defendant, Jeff Graham, is

sentenced to work on the public roads in the State convict road force in Scott county, Virginia,  *    *    * for the period of three months, and also for an additional three months unless the fine and cost incident to the prosecution of this case shall be paid pursuant to the statute in such cases made and provided, and that he be delivered to the superintendent of the State convict road force of Scott county *    *."

The assignments of error are two in number:

First: "Petitioner alleges and represents that the evidence in the case was wholly insufficient to convict him of transporting whiskey."

Second: "The court erred in sentencing petitioner to an additional three months on the road unless fine was paid."

The assignments of error will be disposed of in the order above set forth.

To maintain the issue upon the part of the Commonwealth, D. E. Carter, a witness, testified as follows:

"I am deputy sheriff of this county, and live in Fulkerson magisterial district, Scott county, Virginia.

"Some days before we arrested the defendant, Jeff Graham, on this charge he sent word, as I have been informed, for the officers to be sure and come to his place, that he wanted to see us.

"George Hensley, deputy sheriff, and myself, before daylight, I should say about 5 o'clock in the morning, on the day we arrested Jeff Graham went to his, Graham's, home. We called Mr. Graham out. He was barefooted and bareheaded, but had on a pair of blue bib overalls. We asked him if he could tell us or if he knew of any whiskey being made or sold in his neighborhood. He said he knew of none. He had been drinking recently as I could smell what I was sure was corn whiskey on his breath. We were up close to

him when I was talking to him.   He told us he knew
of no whiskey being made or sold in this neighborhood,
and for us not to come back until we heard from him;
that he would investigate and if he found that any
whiskey was being made or sold that he would let us
know and we could then come and make a raid.   Gra-
ham then went back into his house.   I suspected him
of having some whiskey, as he smelt strongly of it.
Sheriff Hensley he left to go and join sheriff Frazier
who was over across the ridge, and I went up on to a
rise, or hill, about 150 to 200 yards from Graham's
house, where I could see his house and there I watched
his house until after daylight, and just about daylight
I saw a man which I took to be the defendant, and I
feel sure was the defendant, Jeff Graham, to the best
of my knowledge, but I would not be positive about
it, coming up out of a hollow in the direction of and
near his barn.   He was going along kinder doubled
up or stooped over and looked to me like he was
carrying something under each arm.   He walked up
to a stump near his barn and stopped.   He got down
on his knees at the stump and I could see him reaching
down and working with his hands as though he was
placing or hiding something there at the stump or near
the roots of the stump.   He then got up from the
stump, passed on by his barn in the direction of his
house, and went into his house.   I did not see any
other man about Jeff Graham's house.   About two
hours after I saw the defendant go from the stump to
the house, Sheriff Frazier and Hensley joined me, and
I informed them of what I had seen and Sheriff Frazier
and I went to this same stump where I had seen the
man, whom I took to be the defendant, and there we
found hid in this stump two half-gallon fruit jars full
of corn whiskey.   We took possession of this whiskey.

We then went to the defendant's dwelling house, which was about 100 yards from this stump where the whiskey was found, and there found and arrested the defendant, Jeff Graham. We found no other man there at his home. We arrested the defendant at his home in this county and the whiskey we found was in Scott county, Virginia, and this was within one year next prior to the finding of the indictment in this case. In fact I think it was in December, 1921, and the indictment was made in January, 1922, as I recall. This whiskey was found on the land and premises of the defendant.

"The man that I saw hide the whiskey in the stump early that morning about daylight looked to me like the defendant, and at the time I saw him place the whiskey at the stump he had on the same kind of clothes and they look to me like they were the same clothes that we found on him at the time we arrested him about two hours later that same day. The first time that I ever saw Graham, as I now recall, to know him, was the morning before we arrested him about 5 o'clock. . We called him out of his house and talked to him. I was very close to him then and I think he is the man that I saw go to the stump where I afterwards went and found the two jars of whiskey."

This is all the evidence in the case as to the main transaction; the defendant introducing no evidence on the subject.

It is contended by counsel for the accused that the case of the Commonwealth fails because the evidence "does not identify defendant with any degree of positiveness."

[1] It is elementary that in a criminal prosecution it is incumbent upon the Commonwealth to prove the commission of the offense, by the accused, by proof

which satisfies the jury beyond a reasonable doubt. *Goldman's Case*, 100 Va. 865, 42 S. E. 923.

[2] Applying this rule to the instant case, the inevitable conclusion is that the Commonwealth has borne the burden imposed upon it by the law.

That the witness, Carter, stated in one breath that he was "sure" the man he saw carrying "something" under each arm was the accused, and in the next breath that he was not positive is no proof of inconsistent statements; it is to our mind but the guarded expression of a very cautious person. Be this as it may, the Commonwealth was not confined to direct evidence in this case.

[3, 4] Circumstantial evidence may be as potent in proving the *corpus delicti* and the criminal agent as direct evidence. In *Longley's Case*, 99 Va. 811, 37 S. E. 339, the rule is thus stated: "Circumstantial evidence is legal and competent in criminal cases and if it is of such a character as to exclude every reasonable hypothesis, other than that the defendant is guilty, it is entitled to the same weight as direct testimony."

Let us then review briefly the circumstances which point unerringly to the guilt of the accused.

[5] Carter testifies that when he first went to the house of the accused he smelt corn whiskey on his breath. Later a man was seen coming from a hollow near the barn of accused, he was walking in a stooping position and was carrying something under each arm; he went to a stump, was seen working with his hands, then left the stump and went *into* the house of the accused. No other man than the accused was seen at or near the house. The man at the stump had on the same kind of clothes as the accused. At the stump where the man was working two half-gallon jars of

whiskey were found.   The premises, where the liquor was found, belonged to the accused.

To require a stronger chain of circumstantial evidence than this, before the accused could be convicted, would in our view place a premium on crime.

There is no merit in the first assignment of error as the guilt of the accused is plainly established.

[6] (2)   As to the second assignment of error, we deem it only necessary to state that it is without merit, as a similar assignment has been disposed of by this court, contrary to the contention of the accused, in an opinion delivered by Prentis, J., in *Gilreath* v. *Commonwealth*, 136 Va. 709, 118 S. E. 100, and reaffirmed in an opinion handed down by West, J., in the case of *Kilgore* v. *Commonwealth*, 139 Va. 581, 123 S. E. 534.

There being no error in the judgment of the trial court, it will therefore be affirmed.

*Affirmed.*