### Richmond

## IRIS DENISE CHRISTIAN

### v.

## COMMONWEALTH OF VIRGINIA

April 24, 1981.

Record No. 801265.

Present: Carrico, C.J., Harrison, Cochran, Poff, Compton, and Thompson, JJ.

Timothy J. Dolan for appellant.
Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

Iris Denise Christian, 17 years of age, mother of a two-year-old son and a six-month-old daughter, was tried under an indictment charging that she "did feloniously and unlawfully and maliciously cause bodily injury to [her daughter] with intent to maim, disfigure, disable or kill her" in violation of Code § 18.2-51. Convicted by the trial court sitting without a jury, she was sentenced to a term of 10 years in the penitentiary with five years suspended on condition of good behavior for 20 years.

In August 1979, the defendant placed the infant in a licensed child day care facility. The driver of a "Tiny Angels" bus and "two or three aides" picked the child up at her home in the mornings and delivered her to the nursery where she remained until the late afternoon hours in the care of Barbara Vaughan and two assistants. On the morning of November 29, 1979, as Ms. Vaughan was changing the infant's diaper, the child "gave . . . a terrible startled scream". Since she had "appeared all right" when she left the nursery the previous afternoon, Ms. Vaughan had her admitted to the emergency room at the Medical College of Virginia.

An examination performed by Dr. Leslie Ann Price, a pediatrics resident, revealed a "mild bruise above the left eye", a pale, "oval scar" beneath the left eye, an "old healing fracture of the left seventh rib", a "new fracture of the left femur", and a "new fracture of the lower bone of the right" leg. Dr. Price testified that the oval scar was "consistent with the shape of a cigarette burn or some other round oval break in the skin of more than a few weeks duration." She was not "absolutely sure that a cigarette burn caused that scar" and acknowledged that it "possibly" could have resulted from a fall. She said that "a substantial amount of force [was] required to break

the [rib] and a two year old child would not be capable of exerting that much force." Dr. Price described the leg injuries as "buckle fracture[s]" and the causative trauma as a "compression and twisting force". She felt that it was "extremely unlikely" that the fractures resulted from a fall from bed.

Ms. Vaughan testified further that she had once observed a "little red dot" in one of the infant's eyes and "a healing burn or wound which is round like a cigarette" under the eye. She said that the defendant had never told her about any accident or injury suffered by the child.

Steve Dalton, the investigating officer, interviewed the defendant the day after her daughter was hospitalized and on several other occasions. Dalton testified that she told him in the first interview that "she was the only one that had custody of the child" the night of November 28, that "within the past two weeks the child had fallen off the bed at its grandmother's home", and that "the older child had sat on the baby" sometime before that. Later, when Dalton made the arrest, the defendant repeated what she had told him in the first interview.

Called as a defense witness, Dr. Joyce L. Whitaker, a pediatrician, testified that the defendant had brought her baby to her on five occasions, the last on November 12, 1979. Dr. Whitaker treated her for gastritis and respiratory and ear infections and hospitalized her for 12 days for "an upper GI study". Dr. Whitaker said that the defendant "was very good about keeping follow-up visits". During the time the child was her patient, she was never treated for a burn or fractures.

The defendant's father, who had lived with his daughter and grandchildren since November 1, 1979, left for work at 10:45 p.m. on November 28. He testified that the defendant "treats both of [her children] like a mother—kind." He never saw her "get mad at either of them", "strike" them, or "act violently" toward them.

Testifying in her own behalf, the defendant denied that she had injured her daughter or that she had been aware she had suffered any injuries. She said that she did not smoke and that the scar beneath her daughter's eye was caused by a scratch. "Babies scratch themselves," she said, "and I assumed she scratched herself." She acknowledged that she and her children were alone in the house after her father left for work the night of November 28.

Challenging the sufficiency of the evidence to support her conviction, the defendant first contends that the Commonwealth failed to prove

the "requisite criminal intent to maim, disfigure, disable, or kill" and, hence, failed to establish the *corpus delicti*. In effect, the defendant argues that the evidence is consistent with the possibility that her daughter's injuries were caused by accidental means.

Considering the *mens rea* contemplated by the mayhem statute, we have said:

> "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury."

*Dawkins* v. *Commonwealth,* 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). Quoting the comment in *Roark* v. *Commonwealth,* 182 Va. 244, 250, 28 S.E.2d 693, 695-96 (1944), that an unarmed assault "may be attended with such circumstances of violence and brutality that an intent to kill will be presumed", we found the inference arising from the grievous nature of the injuries inflicted sufficient to prove Dawkins' criminal intent.

Necessarily, the defendant's conviction is based upon the trial court's conclusion that the injuries suffered by this infant were the result of acts committed intentionally or without just cause or excuse. The defendant testified that the oval scar was caused by a self-inflicted scratch; but the expert testimony, and that of Ms. Vaughan, attributed the scar to a cigarette burn. The defendant suggested that her young son had sat on his sister and broken her rib; but the doctor said that "a two year old child would not be capable of exerting that much force." When the officer questioned the defendant about the leg fractures, she told him that her daughter had fallen from her bed two weeks before; but the medical evidence showed that the buckle fractures were only two days old and that they had been caused by a "compression and twisting force". The trial court was entitled to accept the doctor's opinion that it is "extremely unlikely" that such a force occurred with such effect in the manner or at the time suggested by the defendant.

We hold that the evidence was sufficient to support the finding that the injuries were caused by criminal conduct, and we turn to the question whether it was sufficient to show that the accused was the criminal agent.

Like the body of the crime, criminal agency can be proven by circumstantial evidence. *Graham* v. *Commonwealth,* 140 Va. 452, 457, 124 S.E. 429, 430 (1924). Were the rule otherwise, many atroc-

ious crimes would go unpunished. Often, the deceased is the only eye-witness to murder. Typically, child abuse is practiced by a parent in the privacy of the home with no one present but the victim and frequently, as here, the victim is an infant too young to testify.

A single circumstance seldom justifies a finding of criminal agency. Thus, mere opportunity to commit an offense raises only "the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction." *Simmons* v. *Commonwealth,* 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968). Opportunity is always a relevant circumstance, of course, and, when reinforced by other incriminating circumstances, may be sufficient to establish criminal agency beyond a reasonable doubt. Moreover, where it appears that a criminal assault was made upon a child within a particular period of time, evidence which shows that the accused was sole custodian of the child during that period may be sufficient, standing alone, to prove criminal agency.

But there was no such evidence here. It is true that, after the defendant's father left for work the night of November 28, she had sole custody of her daughter until she placed her on the bus the next morning. Thereafter, however, at least five people had an opportunity to handle the child before Ms. Vaughan discovered that her legs were broken. If, as the Attorney General asks us to infer, the defendant injured her daughter during the night, it is strange the bus driver or his aides or one of Ms. Vaughan's assistants did not discover the painful fractures.

When the only evidence connecting the accused with the crime is circumstantial, the evidence is sufficient to establish criminal agency only when it meets the standard required for proof of other elements of the offense.

> "All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt. To accomplish that the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the *corpus delicti* and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty."

*Webb* v. *Commonwealth,* 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963);

quoted in part, *Barrett* v. *Commonwealth,* 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969).

While the defendant's opportunity to injure her daughter and certain other circumstances in this case may raise inferences which "create a suspicion of guilt ... or even a probability of guilt", we are of opinion the evidence is insufficient to exclude a reasonable hypothesis that someone other than the defendant was the criminal agent.

The judgment will be reversed and the indictment will be dismissed. *Hudson* v. *Louisiana,* 101 S. Ct. 970 (1981).

*Reversed and dismissed.*