COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Bumgardner
Argued at Salem, Virginia

MATTHEW DEAN WYATT

v.   Record No. 0553-97-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RUDOLPH BUMGARDNER, III
AUGUST 4, 1998

FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
B. A. Davis, III, Judge

(Mary E. Harkins, on brief), for appellant.
Appellant submitting on brief.

(Richard Cullen, Attorney General; Michael T.
Judge, Assistant Attorney General, on brief),
for appellee.  Appellee submitting on brief.


The defendant was charged with breaking and entering and grand larceny of the Barry M. Dudley, Sr. and James Allen Mills, Jr. homes.  The defendant argues that there was insufficient evidence to link the defendant to the crimes.  Finding that the evidence does establish the criminal agency of the defendant, we affirm.

Where an appellant challenges the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the Commonwealth, granting it all reasonable inferences fairly deducible from it.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  This Court does not substitute its judgment in determining the facts for that of the

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

fact finder.  See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992).  Unless that finding is plainly wrong, or without evidence to support it, it shall not be disturbed on appeal.  Code § 8.01-680; George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991).

Barry Dudley, Sr. returned home July 7, 1996 after being away seven to eight days.  His house had been broken and entered and the gun safe damaged.  Several rifles, pistols, and shotguns had been stolen from his house.  The same day, James Allen Mills, Jr. returned home between 4:00 and 5:00 p.m. and learned that his house had been broken into and guns, a knife set, and other items were taken.  Both parties recovered at least one stolen gun from Tommy Dent.

John Wilson testified that sometime in July 1996 the defendant and Amy Phillippi came to his home, arriving in a black vehicle, with five guns and Mills' knife set to sell.  The defendant brought the weapons into Wilson's house.  Phillippi was the defendant's girlfriend and was the daughter of victim James Allen Mills, Jr.  Wilson bought the guns and knife set.  When asked whether he paid any money or anything over to Wyatt, Wilson responded "I think it was drugs, probably; she (Phillippi) got the money and drugs."

Wilson also testified that the defendant only came into his house once.  Wilson had observed the defendant in the car on numerous occasions when Phillippi came to his house to sell

weapons. The defendant admitted being inside Wilson's home at least four times when he purchased drugs for cash. Phillippi also admitted being there with the defendant. Later in his testimony, Wilson said that the defendant sold him only one gun, but Phillippi had sold him others. Wilson said he could not identify the specific gun he purchased from the defendant.

Todd Smith identified Mills' knife set and Dudley's shotgun as two items Wilson had given him to sell. Smith sold these items to Dent. The sheriff's department returned a rifle and knife set to Mills. Dent called Dudley and asked him to come over. Dent told Dudley he would return a shotgun to him if he could identify it. Dent returned the shotgun to Dudley.

The defendant testified that he was dating Phillippi, but he denied breaking in either home. He admitted selling a gun to Wilson but said that he had traded for it. He said he got the gun he sold from Lee Doss and he traded it for $40 with someone named Freeman Muse. He admitted going to Wilson's home several times. When he went to Wilson's he went only to buy drugs. He was not aware that Phillippi had ever gone there without him. He was usually with her when she went there but would not let her go in a place like that. He denied that she sold guns and said Wilson was lying when he said she had.

Phillippi testified she went to Wilson's home to buy drugs, but did not take any guns. She did not know anything about the charges. She testified that she and the defendant were camping

July 4-7, during which time the crimes could have occurred, and she was always with the defendant then. He did not break in either place, and she was not aware of him selling or pawning a gun. At first, Phillippi said she was in the car when the defendant brought his gun to Wilson's to sell. She later stated that she was not there on the same occasion but knew about it because he had told her. Both Phillippi and the defendant were doing drugs but neither was working. She had two children to support.

Presented with material conflicts in evidence, we find that the trial court was entitled to believe Wilson and disbelieve the defendant and Phillippi. The trial court, sitting as the trier of fact, was entitled to assess which witnesses were credible and the weight to be given the testimony; on appeal the trial court's factual findings are entitled the same weight as a jury's verdict. See Lane v. Lane, 184 Va. 603, 611, 35 S.E.2d 749, 752 (1945).

The trial judge found Wilson was credible and based upon his testimony found that Phillippi and the defendant were acting together in the break-ins and in the sale of the stolen articles. He convicted the defendant of both charges of breaking and entering and grand larceny.

The evidence establishes that both homes were
broken into and goods were taken from both.
It shows that immediately after the

burglaries, the defendant and Phillippi sold various guns to Wilson. At least the knife set stolen from the Mills home and one shotgun stolen from the Dudley home were traced through Wilson to the defendant and Phillippi. Although Wilson testified that he only bought one gun directly from the defendant, he also testified that on the other occasions that he bought guns from Phillippi, the defendant had brought the guns there and waited for Phillippi in the car. At another time in his testimony, he said he bought five guns and the knives from them, including both the defendant and Phillippi in the reference. It is for the trial court to sort out the truth from the conflicting testimony. The Commonwealth can establish a prima facie case that a defendant broke and entered by (1) proving that goods have been stolen from a house into which someone has broken and entered; (2) justifying the inference that both offenses were committed at the same time, by the same person, as a part of the same criminal enterprise; and (3) proving that these goods were found soon

-5-

thereafter in the possession of the

defendant.

Guynn v. Commonwealth, 220 Va. 478, 480, 259 S.E.2d 822, 823-24
(1979).

> [T]he rule in Virginia is that when the
> Commonwealth's evidence proves a breaking and
> entering and a theft of goods and justifies
> an inference that both offenses were
> committed at the same time by the same person
> as a part of the same criminal enterprise, if
> the evidence proves further that the goods
> stolen were found soon thereafter in the
> possession of the accused, the Commonwealth
> has made a prima facie case that the accused
> broke and entered.  At that point, although
> the ultimate burden of proof remains with the
> Commonwealth, the burden of going forward
> with the evidence shifts to the accused.  If
> the accused fails to go forward with evidence
> in justification of possession, his failure
> is an inculpatory circumstance which,
> considered with the circumstance of
> possession, is sufficient to support a
> conviction of breaking and entering.  If the
> accused elects to go forward with the
> evidence, he bears the burden of proving the
> truth of his evidence in justification of
> possession, and if he fails, his failure is
> another such inculpatory circumstance.

Brown v. Commonwealth, 213 Va. 748, 749-50, 195 S.E.2d 703, 705
(1973).

This case turned on the credibility of the witnesses.  The

defense argued that the Commonwealth's witnesses were not worthy

of belief.  However, the judge specifically ruled that they were

credible.  The evidence taken in the light most favorable to the

Commonwealth shows that the homes were broken and entered.  The

defendant and his girlfriend were in possession of the items

taken and were selling them.  The evidence clearly shows they were acting together and their dominion and control over the stolen property was joint.

The trial court was able to observe the witness' demeanor and evaluate their credibility.  The court was entitled to conclude based on all the evidence that the defendant's testimony was incredible.  Thus the court was entitled to infer that the defendant lied to conceal his guilt.  See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987).

Finding that there is sufficient evidence to support the trial court's decision, we affirm the convictions.

Affirmed.

Benton, J., dissenting.

In a criminal case, where the quantum of proof must be beyond a reasonable doubt, the imperative to secure convictions free of speculation, surmise, and conjecture is constitutionally based.  See In re Winship, 397 U.S. 358, 364 (1970).  Thus, it is well established in Virginia that "mere opportunity to commit an offense raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.'"  Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981) (quoting Simmons v. Commonwealth, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968)).

> Where the Commonwealth, in a criminal case, undertakes to prove the guilt of the accused by circumstantial evidence, as it did in the present case, not only must it prove the circumstances, but it must overcome the presumption of innocence and establish his guilt beyond a reasonable doubt.  All necessary circumstances proved must be consistent with guilt and inconsistent with innocence.  It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt.  To accomplish that the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty.

Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

The evidence proved that in July 1996, someone broke and entered the Dudley residence and stole numerous guns and other

–8–

items.  That same month, someone broke and entered the Mills residence and stole several guns, a stereo system, several pieces of jewelry, some chainsaws, a set of knives, and numerous other items.  One of the shotguns was later returned to Dudley by Tommy Dent, who had purchased the shotgun from Todd Smith.  Tommy Dent also returned a 410 shotgun to Mills.

The Commonwealth sought to prove Wyatt's participation in the burglary through the testimony of John T. Wilson, a convicted felon who purchased the stolen items from Mills' daughter, Amy Phillippi.  Wilson's testimony clearly established that he purchased stolen goods from Mills' daughter.  He testified that he purchased weapons and knives from "Amy [Phillippi] and Todd, this guy."

Wilson's testimony proved, however, that he only bought one gun from Wyatt.  Wilson testified that Mills' daughter and Wyatt came to Wilson's residence and "brought some guns there for [Wilson] to purchase."  Wyatt "may have come in once; most of the time [Amy] came in" alone while Wyatt "was outside . . . in the car."  Wilson stated that he talked to Wyatt "[o]n one occasion . . . [a]bout a price for the gun."  Wilson further elaborated as follows concerning the gun he purchased from Wyatt:

> Q  Okay; are there any items that you purchased specifically from [Wyatt]?  I mean, in other words, you said he only came in once or so.  Did he actually bring any of the items in himself?
>
> A  Yes, the gun.
>
> Q  And which one was that?

A  I am not for sure exactly.  It was a rifle
or shotgun; one or the other.

Q  It could have been a shotgun or a rifle?

A  It could have been either one of them,
but, you know, I am not positive.

Q  Was that the only item that he
specifically sold to you?

A  Yes, and the rest of them Amy sold.

In convicting Wyatt, the trial judge stated that the
evidence proved "[Wyatt] had a shotgun that came from . . .
Dudley's home."  Nothing in the record supports that finding.
Wilson could not identify whether Wyatt had a rifle or a shotgun
and could not testify that the gun was one of the stolen guns.
"Whenever the evidence leaves indifferent which of several
hypotheses is true, or merely establishes only some finite
probability in favor of one hypothesis, such evidence does not
amount to proof of guilt beyond a reasonable doubt."  Sutphin v.
Commonwealth, 1 Va. App. 241, 248, 337 S.E.2d 897, 900 (1985).
Thus, where the evidence "'is equally susceptible of two
interpretations one of which is consistent with the innocence of
the accused, [the trier of fact] cannot arbitrarily adopt that
interpretation which incriminates'" the accused.  Harrell v.
Commonwealth, 11 Va. App. 1, 11, 396 S.E.2d 680, 685 (1990)
(quoting Corbet v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d
251, 253 (1969)).  Wilson could not identify the rifle or shotgun
that Wyatt sold to him.  Thus, the evidence failed to prove that
the gun he purchased from Wyatt was stolen from either residence.

-10-

Wilson's testimony linking the defendant to the identified stolen property was woefully ambiguous. He could only recall Wyatt entering his residence once to sell a gun that he could not identify. He testified that on all other occasions, Wyatt remained outside in the car. Wilson's testimony failed to link Wyatt to possession of any of the stolen items because Wilson's testimony was so imprecise and equivocal regarding Wilson's presence in the residence when Mills' daughter sold the stolen items. That testimony cannot support a finding that Wyatt possessed the stolen items.

The most that can be said with reasonable certainty is that Wyatt sat in the car while Mills' daughter entered Wilson's residence and sold stolen property, including property that came from her father's residence. Wyatt's presence in the car outside while Mills' daughter sold the items to Wilson does not establish beyond a reasonable doubt that Wyatt possessed the stolen property or broke and entered the residences. See Hall v. Commonwealth, 225 Va. 533, 537, 303 S.E.2d 903, 905 (1983) (mere presence is not proof beyond a reasonable doubt of participation in a crime).

For these reasons, I would reverse the conviction.