COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


DEMETRIOUS M. GREEN, S/K/A
 DEMETRIOUS MELVIN GREEN
                                                MEMORANDUM OPINION* BY
v.       Record No. 0703-04-2               JUDGE ELIZABETH A. McCLANAHAN
                                                   FEBRUARY 8, 2005
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
                        William H. Shaw, III, Judge

        Charles E. Haden for appellant.

        Deana A. Malek, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on brief), for appellee.


        Demetrious Melvin Green was convicted in a bench trial for breaking and entering with

the intent to commit larceny, in violation of Code § 18.2-91.  Green contends that the trial court

erred in denying his motion to strike where the evidence failed to prove he broke and entered the

business.  For the reasons that follow, we affirm the decision of the trial court.

                                    I.  Background

        Robert E. Wilson, III, saw and heard someone break into Dave's Transmission in

Middlesex County.  Green was arrested for the crime and indicted by a grand jury.  At the

beginning of Green's trial he stipulated to all the elements of breaking and entering except

identity.  Wilson, who was across the street, approximately 75-100 yards away, testified that he

saw a car, without lights, enter Dave's parking lot at "high speed."  Two men exited the car and

ran around to the back of the shop.  Two more men appeared and ran to the back and then

        _____

            * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Wilson heard glass breaking. He saw "a guy in blue jeans and white t-shirt" run to the front and try to kick in the door to the shop. At that point, Wilson called the police. He then saw the same guy give up trying to kick in the front door and run around to the back of the shop again. He heard more glass breaking in the back of the shop. He then saw the same guy come to the front again and successfully kick in the front door, after which the guy yelled, "Hey, I got in there!" Wilson then saw two men run in the front door of the shop. He saw a flashlight on inside and heard lots of glass breaking. Wilson testified, "They [were] inside, and I could see a flashlight and they [were] in there just breaking all kinds of stuff." At some point Wilson also heard a vehicle window break.

Wilson testified that when Jonathan Wyatt, a Middlesex County Sheriff's Deputy, arrived on the scene, the male in "the blue jeans and white t-shirt" left Dave's parking lot in a white hatchback. He saw the white hatchback head south on Route 17 toward a Hardee's restaurant pursued by the deputy's car. At trial he stated, "About the time the white car left my view, the Sheriff's car came into view. I don't know, 30 seconds or less." On cross-examination, Wilson said he could not identify any of the persons.

Wyatt testified, "While I was approaching Dave's Transmission, I saw the taillights of a vehicle leaving from that area toward Route 17. I followed the vehicle. The vehicle then made a left turn on 17, then made another left and drove behind Leasure's Auto Parts." Wyatt stated he found the white hatchback parked behind Leasure's and identified the vehicle as belonging to Green. Wyatt questioned the sole occupant, Green, as to why he was parked there. Green claimed his eyeglasses had just broken and he was attempting to fix them. Wyatt confirmed Green had eyeglasses in his hand. Wyatt stated he did not find any evidence on Green or see any evidence in the car, so when he received a call for assistance from Officer Ward at Dave's Transmission to pursue a fleeing Chevrolet Blazer, he let Green go.

After the Commonwealth's evidence, Green twice made motions to strike for insufficient evidence, which were denied by the trial judge. Green renewed his motion at the conclusion of all the evidence, which was again denied. In a bench trial, the court found Green guilty and sentenced him to five years imprisonment, with credit for time served. The court conditionally suspended the sentence for a period of ten years.

## II. Analysis

When examining a challenge to the sufficiency of the evidence, the appellate court must review the evidence in the "light most favorable to the prevailing party in the trial court." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citations omitted). The appellate court must discard any evidence which conflicts, either directly or inferentially, with the Commonwealth's evidence, "and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (citations omitted). The issue upon appellate review is "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected" the defendant's theories of defense and found him guilty of the offenses charged beyond a reasonable doubt. Hudson, 265 Va. at 513, 578 S.E.2d at 785. The appellate court must let the decision stand unless it reaches the conclusion that no rational fact finder could have reached that decision. Crowder v. Commonwealth, 41 Va. App. 658, 662, 588 S.E.2d 384, 386 (2003) (citations omitted). The credibility of the witnesses and the weight to be afforded each witness' testimony are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented. Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985).

Green contends that the trial court erred in denying his motions to strike where the evidence failed to prove he broke and entered the business. All of the elements of the crime

were stipulated to at trial except the identity of the perpetrator. Code § 18.2-91. The evidence showed that the testimony of the eyewitness, Wilson, and the responding officer, Wyatt, seamlessly overlapped to identify Green as the person who broke and entered into Dave's Transmission. Wilson observed a white hatchback pull into Dave's Transmission with its lights off. Wilson observed a male wearing blue jeans and a white T-shirt kick in the front door and enter the business. Wilson observed the same male get into the white hatchback and drive away as the police approached. Wilson observed a sheriff's vehicle follow the white hatchback; there were no other vehicles on the road. Wyatt pursued the taillights of the white hatchback, which turned left onto Route 17 and made another left, crossing oncoming lanes of traffic and turning into the parking lot of Leasure's Auto Parts store. The white hatchback did not park in the front parking lot of Leasure's, but instead drove around to the back of the building. Wyatt only lost sight of the white hatchback for a moment as it drove behind Leasure's. Wyatt immediately followed the white hatchback behind Leasure's and determined the car belonged to Green and questioned him there. Even though Wilson described the perpetrator as wearing "blue jeans and a white t-shirt," and the arresting officer, Wyatt, testified that Green was wearing "pants, a shirt and like a light jacket" when he was arrested, the descriptions are not necessarily in conflict – "blue jeans" are "pants" and a "white t-shirt" is a "shirt." Green could have put on a jacket before the deputy arrived. Moreover, whether the clothing descriptions are consistent, and whether some portion of the testimony is rejected and other portions are accepted, are questions of fact for the fact finder. Although Wilson could not specifically identify Green as the male in the blue jeans and white T-shirt, he did testify that the same male who broke in the door to Dave's and yelled "I [broke] in there," drove off in the white hatchback. Green's only explanation for pulling behind Leasure's Auto Parts store was that "his glasses were broken." The fact finder was free to reject that explanation. Rollston v. Commonwealth, 11 Va. App. 535,

- 4 -

547, 399 S.E.2d 823, 830 (1991). The trial court's conclusion that Wilson and Wyatt identified the same man must be upheld unless plainly wrong or without evidence to support it. See Pease v. Commonwealth, 39 Va. App. 342, 350, 573 S.E.2d 272, 275 (2002) (*en banc*) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). See also Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986); Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.").

The sequential testimony of the witnesses left no time frame unaccounted for, and a rational fact finder could have found that Green broke and entered the business of Dave's Transmission.

## III. Conclusion

Under the appropriate appellate standard of review, a rational fact finder, upon consideration of all the evidence, could have found Green guilty of the offenses charged beyond a reasonable doubt. In addition, it is the role of the trial judge to observe and weigh witness testimony and choose to either believe or disregard certain testimony. Therefore, sufficient evidence supports the trial court's decision that the Commonwealth proved beyond a reasonable doubt that Green was the person who broke into Dave's Transmission. Accordingly, we affirm.

Affirmed.

Benton, J., dissenting.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged." In re Winship, 397 U.S. 358, 364 (1970). Accord Green v. Young, 264 Va. 604, 609, 571 S.E.2d 135, 138 (2002). Thus, to support a conviction, the evidence must prove the identity of the accused as the perpetrator beyond a reasonable doubt. Commonwealth v. Smith, 259 Va. 780, 782-83, 529 S.E.2d 78, 79 (2000); Terry v. Commonwealth, 174 Va. 507, 516, 6 S.E.2d 673, 677 (1940). The following principles are pertinent to this appeal:

> "[I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty."

Smith, 259 Va. at 783, 529 S.E.2d at 79 (quoting LaPrade v. Commonwealth, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950)).

At nighttime, Robert Wilson was looking out his bedroom window, which was 75 to 100 yards from Dave's Transmission Shop. He could not identify Demetrious Green as a person he saw entering or leaving the shop. He testified that he saw a person, wearing blue jeans and a white T-shirt, run to a car and leave the shop. His description of the car was equally general -- "a white hatchback, foreign" car. This evidence could only engender a suspicion that Green, who was wearing different clothes, was the person who broke into the shop and drove away. At its core, the evidence proved only that Green was in the vicinity of the store and could have committed the offense; however, evidence that proves the "mere opportunity to commit an

- 6 -

offense raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.'" Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981) (quoting Simmons v. Commonwealth, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968)).

From the evidence in the record, the trier of fact could not conclude that the car the deputy sheriff saw was the same car Wilson saw. Wilson testified the white hatchback "took off" from the shop and went onto the highway in the direction of a Hardee's restaurant. The distance between the shop and the restaurant is "maybe 200, 300 feet." A house is situated between the shop and the restaurant. Wilson testified that his view in the direction of the restaurant is obstructed by part of his building and trees, and he did not describe how far into the distance he could see. Although Wilson testified that he saw no other vehicles on the road, the evidence suggests he may not have been alert to the events because he failed to see a "downsized" suburban utility vehicle that a deputy sheriff unsuccessfully chased when it drove "fast" from the shop.

The deputy sheriff's testimony fails to prove he followed the same car Wilson saw leave the shop. Wilson lost sight of the car "30 seconds or less" before the deputy sheriff's vehicle came into his view. The record does not disclose the car's location on the highway when Wilson lost sight of it. The deputy sheriff testified, however, that he did not see a car leave from the shop. He first saw the taillights of a car beyond the shop, near the restaurant, and before the intersecting street.[1] The deputy testified that a house is situated between the shop and the restaurant, but he did not describe where he first saw the car in reference to the house. No

---

[1] At only 35 miles per hour, a car covers 51 feet in a second. See Code § 46.2-880. Even if the trier of fact could have concluded that the car was moving at 35 miles per hour after it "took off," a car traveling at that speed covers 1,530 feet in 30 seconds. The evidence proved the distance from the shop to the restaurant is only 200 to 300 feet. A fastly accelerating car would cover that distance in only a few seconds.

evidence established where this car entered onto the highway. Thus, the evidence failed to prove the car Wilson described and the car the deputy sheriff followed were the same.

The evidence suggests other reasons that Wilson and the deputy sheriff surely saw different cars. Although Wilson said the car "took off," when the deputy sheriff was asked if the car he saw was speeding, the deputy sheriff testified that the car "appeared to be driving in a normal manner." Moreover, the deputy sheriff even was uncertain that the car Wilson was driving was a "hatchback," and he did not confirm Wilson's testimony that the car was "foreign." Although the deputy sheriff wrote the make and model of the vehicle, he did not testify about that identifying information at trial. The evidence certainly did not negate the reasonable possibility that the car the deputy sheriff saw came from the house, the restaurant parking lot, or from a place on the street obscured from Wilson's view. The Supreme Court repeatedly has "said that 'where a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused].'" Smith, 259 Va. at 782-83, 529 S.E.2d at 79 (quoting Burton and Conquest v. Commonwealth, 108 Va. 892, 899, 62 S.E. 376, 379 (1908)).

The evidence is equally speculative that the man Wilson saw leave the shop was the same man the deputy sheriff detained. Because these events occurred at night and Wilson was 100 yards away from the shop, Wilson could give only a generalized description of the man. He specifically described only the clothing the man wore -- "blue jeans and white T-shirt." In stark contrast, the deputy sheriff testified that Green, the man he detained, wore different clothes. Green wore "pants, a shirt and like a light jacket . . . not like a light color but like a light material, a thin jacket." Significantly, he testified that Green wore "pants." Although the deputy sheriff did not recall the color of the pants Green wore, he did not testify that Green wore "blue jeans." Thus, this is not a case where "all necessary circumstances [are] consistent with guilt and

- 8 -

inconsistent with innocence." Smith, 259 Va. at 783, 529 S.E.2d at 79. It has long been the rule in Virginia that "'[i]t is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt.'" Christian, 221 Va. at 1082, 277 S.E.2d at 208 (quoting Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963)). The evidence in this record clearly established that Green's clothing was not the same as the clothing worn by the man Wilson saw driving from the shop. The only explanation for the discrepancy is the lack of identity between the two men.

The record further established that the deputy sheriff permitted Wilson to depart after Wilson denied being at the shop. The deputy sheriff found no incriminating circumstances, and he specifically testified that Green had no cuts or scrapes on his body and had no glass about him. No fingerprints or other physical evidence linked Wilson to the burglary at the shop. Thus, the circumstantial evidence proved Wilson was in the neighborhood, nothing more. Contrary to the principle that "a suspicion of guilt, however strong, or even a probability of guilt, is insufficient to support a criminal conviction," Bishop v. Commonwealth, 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984), the trier of fact convicted Green based on suspicion and purely speculative evidence. "The guilt of the party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence." Allen v. Commonwealth, 211 Va. 805, 808, 180 S.E.2d 513, 515 (1971).

For these reasons, I would reverse the conviction. I dissent.