COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Humphreys, Raphael and Callins
Argued by videoconference


JORDAN SEVERANCE BANKS

                                                    MEMORANDUM OPINION* BY
     v.       Record No. 0763-21-1              JUDGE DOMINIQUE A. CALLINS
                                                          MARCH 8, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

Charles E. Haden for appellant.

Mason D. Williams, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Jordan Severance Banks appeals from his convictions for burglary under Code § 18.2-91

and grand larceny under Code § 18.2-95. Banks contends that the trial court erred in judging the

evidence sufficient to find him guilty of the charges. For the following reasons, we affirm the

judgment of the trial court.

I. BACKGROUND

We review the evidence and all reasonable inferences therefrom in the light most

favorable to the Commonwealth, the prevailing party below. *Pooler v. Commonwealth*, 71

Va. App. 214, 218 (2019). So viewed, the facts established at trial were as follows. On

September 18, 2020, Linda Robey left her home at "ten of nine" to go to work. Upon her return

home around "five-ish," she saw a blue 1994 Oldsmobile parked in her driveway. Not

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

recognizing the Oldsmobile, she "pulled [her vehicle] in behind it" and walked to the "water side" of her home to see if someone was in her front yard. While walking, Robey thought she saw a "silhouette or . . . a shadow" inside her home. She then went inside and found several pieces of jewelry missing from where she kept them in her kitchen. Robey then went upstairs to her bedroom, where she kept the rest of her jewelry. She used the restroom before going back downstairs and then outside to call 911. Once outside, she saw that the Oldsmobile was no longer in the driveway. Robey called the police. She reported that several items, including jewelry, a red jewelry box, and a jewelry receipt dated 1989 documenting a purchase of jewelry, were taken from her home.

At trial, the Commonwealth introduced Commonwealth's Exhibit 1, three photographs depicting a blue Oldsmobile from different angles. Robey confirmed that the vehicle in the photographs was the same vehicle she saw parked in her driveway on the day of the burglary.

At 12:42 a.m. on September 19, 2020, Sergeant Nicholas Leaver conducted a welfare check of an individual "who appeared to be passed out in a vehicle" parked at the Tidemill 7-Eleven store in Gloucester County. He found the individual inside a blue 1994 Oldsmobile and provided the license plate number to dispatch before approaching the vehicle and discovering Banks asleep inside. Shortly after he woke Banks, Sergeant Leaver learned that the Oldsmobile had been reported stolen. Sergeant Leaver arrested Banks and had the vehicle impounded.

At trial, Sergeant Leaver confirmed that the vehicle depicted in Commonwealth's Exhibit 1 was the same vehicle in which he found Banks.

A few days after the arrest, police officers searched the Oldsmobile at the impound lot. The search yielded, among other things, several pieces of jewelry, a jewelry box, and a jewelry receipt dated 1989. The jewelry and jewelry-related items were the same Robey identified as the

missing items from her home. After Senior Investigator Steven Perry read Banks his *Miranda* rights, Banks told Investigator Perry that "everything that was in the car was already in the car when he borrowed it" from the vehicle's owner, Shelly Arangio.

At trial, the parties stipulated to and read into the record a written statement prepared by Arangio, who did not testify. According to the statement, on September 17, 2020, Arangio lent her blue 1994 Oldsmobile to Banks so he could go to the store. Because Banks did not return the vehicle, she reported it stolen the next day. Arangio stated that when she loaned Banks the vehicle, it contained "some various pieces of trash and an old printer." She denied that Robey's jewelry was in the vehicle when she lent it to Banks.

Banks testified in his own defense. He explained that he borrowed the Oldsmobile from Arangio to visit family in Gloucester County. After visiting his parents in the morning, Banks drove to the Tidemill 7-Eleven, and then to a nearby Wendy's restaurant. While at the 7-Eleven, Banks encountered Lewis Kellum, whom Banks initially described as "a buddy," but later admitted he "d[idn]'t really know him." Banks agreed to give Kellum a ride home and to allow Kellum to borrow the Oldsmobile. According to Banks, Kellum then asked Banks whether he would be interested in buying some tools and jewelry. Banks testified that he was interested, but Kellum did not have the items at that time. According to Banks, Kellum then dropped Banks off at a friend's home "somewhere between" 9:00 a.m. and noon for "an hour [or] two hours."

Banks testified that Kellum returned the Oldsmobile to Banks at the friend's house sometime "around dinner," which Banks specified was "about four o'clock" in the evening. From there, Banks continued to drive the Oldsmobile, as he "had other things [he] needed to take care of" before returning to the Tidemill 7-Eleven at 10:00 p.m. Banks remained in the 7-Eleven parking lot until Sergeant Leaver found him asleep shortly after midnight on September 19, 2020.

Although he did not state when, Banks testified that he paid Kellum $500 in cash for "miscellaneous stuff, tools, and some jewelry." Upon further questioning by the trial judge, Banks acknowledged he "was not a hundred percent sure" what pieces of jewelry he purchased, nor was he "a hundred percent sure" whether the red jewelry box was part of his purchase. He admitted he "drank a little" that day.

Banks testified that he did not initially tell the police about his encounters with Kellum because he was "nervous" and "didn't really know what to say." Banks also explained that he was hesitant to incriminate Kellum because, some years before, Banks had incriminated his own father in an unrelated crime and that his father became a convicted felon and never forgave Banks.

At the conclusion of the trial, Banks's counsel challenged the sufficiency of the evidence. Rejecting Banks's argument, the trial judge explained, "I don't accept your story that you bought jewelry and tools but you aren't even able to name what jewelry." The trial judge convicted Banks on the charges of grand larceny and burglary, and sentenced Banks to three years' incarceration.

## II. STANDARD OF REVIEW

On appeal, Banks challenges the sufficiency of the evidence supporting his convictions. Under the applicable standard of review, this Court considers whether any rational factfinder, using the evidence presented, could have found the essential elements of the crime beyond a reasonable doubt. *Smith v. Commonwealth*, 296 Va. 450, 460 (2018). "The judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Id*. (quotations omitted). As the reviewing court, we do not substitute our judgment for that of the trial court, even if our view of the evidence might yield a different conclusion. *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014).

## III.  ANALYSIS

Banks contends that the evidence was insufficient to support his convictions for grand larceny and burglary.  Specifically, Banks argues that the Commonwealth failed to exclude the reasonable hypothesis that another individual committed the crimes.

Larceny is the "wrongful or fraudulent taking of another's property without his permission and with the intent to permanently deprive the owner of that property."  *Britt v. Commonwealth*, 276 Va. 569, 574 (2008).  Where the wrongfully taken goods have a value of $1000 or more, an accused may be convicted of grand larceny.[2]  Code § 18.2-95(ii).  Once the Commonwealth establishes a *prima facie* case of larceny, then a person's unexplained possession of the recently stolen goods permits a trial court to make an inference of larceny by that person. *Bright v. Commonwealth*, 4 Va. App. 248, 251 (1987).

Code § 18.2-91, in relevant part, defines burglary as the "[daytime breaking and entering of a dwelling house] with intent to commit larceny."  *See also Dalton v. Commonwealth*, 14 Va. App. 544, 546 (1992).  It is well-settled that burglary may be inferred if the Commonwealth establishes certain facts.  *See Sullivan v. Commonwealth*, 210 Va. 201, 203 (1969).  The Commonwealth may establish a *prima facie* case by "(1) proving that goods were stolen from a house broken into, (2) justifying the inference that both offenses were committed at the same time, by the same person, as part of the same criminal enterprise; and (3) proving that the goods were found soon thereafter in the possession of the accused."  *Bright*, 4 Va. App. at 251.  An individual's exclusive, unjustified possession of the stolen goods shortly following a burglary supports both the inference of breaking and entering and of larceny.  *Sullivan*, 210 Va. at 203.

---

[2] The Commonwealth presented evidence at trial indicating the value of the stolen jewelry as $20,000.  On appeal, Banks does not dispute that the value of the goods stolen exceeded $1000.

- 5 -

The Commonwealth's evidence sufficiently proved that a larceny at Robey's home occurred because the evidence showed that jewelry, a jewelry box, and a jewelry receipt were removed from her home after someone entered her home without her consent. The evidence also justified the inference that the theft and the breaking and entering occurred simultaneously by the same individual as part of the same criminal enterprise. When she came home from work, Robey saw a blue Oldsmobile parked in her driveway and observed a "shadow" inside her home. After going inside the home, she discovered some of her jewelry missing. When she went back outside to call 911, the blue Oldsmobile was gone. A few days later, the jewelry was recovered from the Oldsmobile. Finally, the Commonwealth sufficiently proved that the stolen goods were in Banks's possession. The evidence showed that the police found Robey's stolen items in the Oldsmobile and that the Oldsmobile had been in Banks's exclusive possession at the time of the burglary and after, until the police impounded the vehicle. The trial court could properly infer from the evidence that Banks committed both grand larceny and burglary. *See Bright*, 4 Va. App. at 252 ("Once the Commonwealth establishes a *prima facie* case, '[i]t is the province of the [fact finder] to determine the inferences to be drawn from [the] evidence.'" (alterations in original) (quoting *Cook v. Commonwealth*, 226 Va. 427, 432 (1983))).

Once the Commonwealth has met its initial burden, "although the ultimate burden of proof remains with the Commonwealth, the burden of going forward with the evidence shifts to the accused." *Brown v. Commonwealth*, 213 Va. 748, 750 (1973). The accused may explain how he came into possession of the stolen goods and, in doing so, "bears the burden of proving the truth of his evidence in justification of possession and if he fails, his failure is another such inculpatory circumstance." *Id.*

Banks argues that the Commonwealth offered no evidence of fingerprints or DNA, nor any eyewitness testimony identifying him as the criminal agent. However, Banks cites no

authority supporting his contention that biological evidence and eyewitness testimony are necessary to prove Banks committed the crimes of which he is accused. Circumstantial evidence is as competent as direct evidence to prove the identity of a criminal agent. *See Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999); *Christian v. Commonwealth*, 221 Va. 1078, 1081 (1981) (citing *Graham v. Commonwealth*, 140 Va. 452, 457 (1924)). And a trial court may infer criminal agency if an individual possesses stolen property close in time to the actual theft. *See Winston v. Commonwealth*, 26 Va. App. 746, 757 (1998) (holding an observation of an appellant's exclusive possession of a stolen vehicle within hours of the theft justified the inference that the appellant was the thief). Here, the Commonwealth put forth competent evidence that an individual operating a blue 1994 Oldsmobile stole Robey's jewelry and related items and, within a short time thereafter, police found some of the stolen jewelry and related items in the blue 1994 Oldsmobile recovered from Banks. By his own admission, Banks was alone in the Oldsmobile from approximately 4:00 p.m. on September 18, 2020 until his arrest the next day. On cross-examination, Banks acknowledged possession of the jewelry found in the Oldsmobile. The trial court was entitled, as a matter of law, to infer from this evidence that the same person who committed the larceny also committed the related burglary and that Banks was that person. *See Commonwealth v. Moseley*, 293 Va. 455, 465 (2017).

A conviction can be supported with circumstantial evidence, provided it excludes every *reasonable* hypothesis of innocence. *See Tucker v. Commonwealth*, 18 Va. App. 141, 143 (1994). Thus, as the Supreme Court of Virginia has frequently iterated, "the reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Moseley*, 293 Va. at 464 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). Banks contends that the trial court failed to exclude his reasonable hypothesis of innocence. At trial, he advanced the theory that

"someone else, possibly Lewis Kellum" committed the burglary. He testified that on the day of the burglary he lent the Oldsmobile to Kellum, and later purchased from Kellum an assortment of tools and jewelry—ultimately identified as Robey's stolen items—for $500. However, on cross-examination Banks could not identify any specific piece of jewelry he purchased from Kellum. Further, Banks admitted that Kellum returned the vehicle at "about four o'clock" that day and that from that time Banks maintained exclusive possession of the vehicle. Banks's exclusive possession includes during the time of the burglary, which occurred at 5:00 p.m. that day. Thus, by his own admission, Banks possessed the Oldsmobile at the time of the crime. His testimony not only fails to establish his innocence, it implicates him as the *most* likely individual to have committed the offenses.

Moreover, the evidence shows that Banks told Investigator Perry that "everything that was in the car was already in the car" and that "everything in the car" belonged to Arangio. This statement directly contradicts Banks's explanation that he purchased the jewelry from Kellum. After the Commonwealth established their *prima facie* case, Banks bore the burden of justifying his possession of the stolen items. *See Brown*, 213 Va. at 750. But his statement to Investigator Perry and his trial testimony present incongruent theories of innocence that, together, serve only to inculpate him. *See id*. Therefore, "a rational factfinder could have found [that] the incriminating evidence renders [Banks's] hypothesis of innocence unreasonable." *James v. Commonwealth*, 53 Va. App. 671, 682 (2009). Here, the trial court did so find, and its judgment was neither plainly wrong nor unsupported by the evidence.

## IV. CONCLUSION

We hold that the evidence before the trial court was sufficient to prove Banks's commission of grand larceny and burglary. Accordingly, we affirm the convictions.

*Affirmed.*